688 F.2d 716
 11 Fed. R. Evid. Serv. 980
 German EBANKS, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant-Appellee.
Merlin B. PAYMENT, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant-Appellee.
Vivian Marie SELF, etc., Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant-Appellee.
Oliden P. SALOMAN, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant-Appellee.
Bobby E. LAURENDINE, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant-Appellee.
Bobby Joe BASSHAM, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant-Appellee.
Edward BURKE, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant
Third Party Plaintiff-Appellee,
Chevron Shipping Co., Third Party Defendant-Appellee.
Gene MOORE, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant
Third Party Plaintiff-Appellee,
Chevron Shipping Co., Third Party Defendant-Appellee.
Henley SMITH, Plaintiff-Appellant,
v.
GREAT LAKES DREDGE & DOCK CO., a corporation, Defendant
Third Party Plaintiff-Appellee,
Chevron Shipping Co., Third Party Defendant-Appellee.
 Nos. 79-2808, 79-3808 to 79-3810.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 27, 1982.
 
 Leonard C. Jaques, James F. Finn, Detroit, Mich., for plaintiffs-appellants in No. 79-2808.
 Dewey R. Villareal, Jr., Tampa, Fla., Courtney Wilder Stanton, Jacksonville, Fla., for defendant-appellee in all cases.
 Arthur Roth, Miami, Fla., for plaintiffs-appellants in Nos. 79-3808, 79-3809 and 79-3810.
 Ulmer, Murchison, Ashby & Ball, Jacksonville, Fla., for defendant-appellee in Nos. 79-3808 and 79-3810.
 Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, Fla., for defendant-appellee in Nos. 79-3808, 79-3809 and 79-3810.
 Before TUTTLE, KRAVITCH and HENDERSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 The appellants here seek reversal of a district court judgment in favor of Great Lakes Dredge and Dock Company, their Jones Act employer. Their principal contention on appeal is that the trial court erred, upon submitting special interrogatories to the jury in this Jones Act and general maritime law negligence action, in including a question which required the jury to determine the comparative degrees of causation between the defendant Great Lakes and a non-party to the suit, Chevron Transport Company, and Chevron Shipping Company (Chevron).
 
 
 2
 Briefly stated, the plaintiffs were members of the crew of a dredge and attached barge, having a length of over 400 feet, which was dredging out the channel of the St. Johns River a short distance downstream from the Port of Jacksonville, when the dredge and barge were struck broadside by the 600 foot tanker, The Robert Watt Miller. The crewmen were thrown into the water when the barge was overturned by the collision, and one drowned. The plaintiffs below, alleging a contractual obligation of Great Lakes with the Corps of Engineers to comply with Corps of Engineers Manual EM 385-1-1, March 1, 1967, General Safety Requirements 32 CFR 7.602-42, alleged, and produced evidence to demonstrate a failure to comply with several of the safety requirements in the manual, including more significantly the failure to have a lookout and the failure to have a safety skiff available solely for the purpose of "emergencies and life saving drills," and "kept afloat or ready for instant launching." Other violations of the manual as to which proof was offered was the failure to give instructions about abandoning ship or any other safety instructions, or the requirement that life preservers be kept handy at all times. Several of the plaintiffs who were thrown into the water were without preservers, including the crewman who was drowned. Moreover, there was proof from which the jury could have found that, while it was the duty of the dredge to "straighten out" entirely on its side of the channel, the stern portion of the barge extended some 25 feet into that part of the channel which should have been left open for the ascending traffic. The pilot of the Robert Watts Miller testified that he was led into the error that caused the collision by virtue of his recognizing that he had less than a full half of the channel for passing the dredge and barge.
 
 
 3
 Because of the allegations of unseaworthiness, which they concluded they had established by undisputed evidence, appellants contend that they made such a case of negligence and unseaworthiness against their employer, that they were entitled to a judgment n.o.v. While we do not reach this question, we do recognize that there was more than sufficient evidence to support the jury's finding of negligence, and more than sufficient evidence to have supported a finding of causation of the injury, which resulted when the crewmen all found themselves trapped on the deck of the barge without life preservers and no skiff available for escape with the 600 foot tanker bearing down on them.
 
 
 4
 These appellants had all settled their claims against Chevron, and they filed suit solely against the owners of the barge on which they worked, as authorized under the Jones Act. Although Great Lakes filed a third party action against Chevron, this action was severed for a separate trial, and Chevron was not before the court as a party or by counsel during the trial in chief. Nevertheless, after the jury had been sworn, Great Lakes filed a motion with the trial court to require the jury to make specific findings as to the degree of liability and causation attributable to Great Lakes and to Chevron. Over the objection of the plaintiffs, the trial court granted its motion.[1]
 
 
 5
 Following a three weeks trial, the case was submitted to the jury on a series of special interrogatories. These were answered in the following manner:
 
 SPECIAL VERDICT
 
 6
 We, the jury in the above matter unanimously find as follows:
 
 
 7
 1. Was the defendant Great Lakes Dredge & Dock Company negligent? (Yes)
 
 
 8
 2. If your answer to No. 1 is "yes", did the negligence contribute to cause injury to Bobby Joe Bassham? (No)
 
 
 9
 3. Was the Dredge ALASKA including its attached barge unseaworthy? (No)
 
 
 10
 4. If your answer to No. 3 is "yes", did the unseaworthiness contribute to cause injury to Bobby Joe Bassham? (Not applicable)
 
 
 11
 5. Was the ROBERT WATT MILLER and/or those responsible for her navigation negligent? (Yes)
 
 
 12
 6. If your answer to No. 5 is "yes", did the fault of the ROBERT WATT MILLER and/or those responsible for her navigation contribute to cause injury to Bobby Joe Bassham? (Yes)
 
 
 13
 7. If your answer to Nos. 2 or 6 are "yes", indicate below the percentage each of the factors as to which you answered "yes" contributed to the injury of Bobby Joe Bassham.
 
 
 14
 (a) Great Lakes negligence ____%
 
 
 15
 (b) ROBERT WATT MILLER negligence (100%)
 
 
 16
 8. If your answer to both Nos. 3 and 4 are "yes", is the plaintiff entitled to punitive and exemplary damages? (Not applicable)
 
 
 17
 Thus, it will be seen that the jury found Great Lakes guilty of negligence but also found that this negligence in no way caused the injury to the plaintiffs. These findings by the jury would seem somewhat unusual in light of the fairly well established deficiencies in the operation and condition of the dredge at the moment of emergency. It is not so unusual when one considers that the trial court gave the jury the opportunity to pin 100 percent of the causation on Chevron, an obviously solvent participant in the tragedy. The same may be said as to the jury's determination of no unseaworthiness on the part of the dredge, once they had concluded that there was 100 percent liability and causation to be laid at the door of Chevron.
 
 
 18
 The appellants contend that it was reversible error for the trial court to inject the question of comparative degrees of causation as to a non-party, not present before the court, and therefore unrepresented. This placed a burden upon the plaintiffs, if they were to make any recovery at all against Great Lakes, to fight the battle on behalf of the Robert Watt Miller's owners and operators, to lessen in the jury's mind the degree of causation to be attributed to the tanker.
 
 
 19
 Plaintiff's objection to the injection of the proportionate liability of Chevron is based on their understanding of what is concededly maritime law: that a plaintiff may "sue ... all the wrongdoers, or any of them, at his election; and ... if he did not contribute to the disaster ... to judgment in either case for the full amount of his loss." The "Atlas," 93 U.S. 302, 23 L.Ed. 863 (1876). The Supreme Court has reconfirmed this to be the law as recently as the case of Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979), a case that will be discussed more hereafter.
 
 
 20
 The appellants contend that only the first four questions and the eighth question should have been submitted to the jury, and the inclusion of questions 5, 6 and 7 as to the causation to be attributed to a non-party were not only confusing, but were misleading, and also doubled the burden on the plaintiffs, by their having to show an absence or smaller percentage of negligence on the part of the Robert Watt Miller in order to obtain any recovery against their employer.
 
 
 21
 The fact that it must have equally been a surprise to the trial court when the jury answered "no" to the second question was evidenced by its comment when the jury requested further instructions as to the special verdict form. The jury wished to know whether, if they answered "no" to either question 2 or 6, they should enter "100 percent" to the other answer. The court stated: "If they answer 'yes' to No. 1, defendant Great Lakes Dredge and Dock Company's negligence, obviously your answer to 2 would probably almost have to be 'yes', wouldn't it? In other words, did it contribute, you would assume it would; isn't that right?"
 
 
 22
 Appellees, to the contrary, contend that the position taken by the appellants amounts to their saying that it was improper for the trial court to hear any evidence about the acts of the tanker which would tend to exculpate the dredge from liability. The appellants make no such claim. Of course, they recognize that it was appropriate for the witnesses for Great Lakes to tell exactly what happened as the tanker bore down on the dredge and its barge, thus clearly showing that it was an act of the large vessel that created havoc among the crew of the dredge. Appellants' position is simply that in a trial between the crew and their employer, dealing with alleged failures on the part of the dredge to maintain proper safety precautions, the percentage of the total liability of the vessel that brought about the condition in which the absence of such safety precautions became critical was totally irrelevant. We agree. Furthermore, we conclude that the jury may well have thought it was establishing 100 percent right of recovery in the plaintiffs against Chevron, since, of course, they knew nothing of the settlement. They, thus, may have paid little attention to the subsidiary question whether Great Lakes' negligence contributed to the injuries. Of course, as all of the participants in the tragic accident were fully aware, the question of the degree of culpability between Great Lakes and Chevron could be, and was already in line to be, determined in the third party suit by Great Lakes against Chevron. Such a proceeding would be fought out between two parties, each having a sole interest for its own protection-not, as here, with one of the parties subject to being cast as the total villain without even being represented before the jury.
 
 
 23
 Appellees contend that the trial court was bound to submit the issue as it did by the recent Fifth Circuit case, Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir. 1979), by which we are bound.[2]
 
 
 24
 Appellants contend that Leger is not applicable to this situation, because of the different posture of the parties involved in the two cases and further, they contend that if it were applicable, it would not be binding, because of a subsequent decision by the Supreme Court in Edmonds v. Compagnie Generale Transatlantique, supra.
 
 
 25
 We agree with the appellants, that the posture of the Leger case is quite different from that before the Court here. Leger sued three defendants as joint tortfeasors, his employer, Drilling Well Control, Inc. (DWC), Dresser Offshore Services, Inc. (Dresser), owner of the barge on which the injury occurred and Continental Oil Co. (Continental), the owner of the offshore oil well where the injury occurred. On the morning of the trial, Leger settled his claims against DWC and Continental for a total of $182,331.05. The insurance company paid him $82,331.05 for his claim against DWC and $100,000 for his claim against Continental. At the trial, the jury found Leger's damages to be $284,090 before the trial court or plaintiff's counsel knew anything about the settlement. The trial court considered it necessary to grant a new trial, except for the amount of damages, because it thought it necessary for the jury to be aware of the continuing interest in the lawsuit of the various witnesses from DWC and Continental, because the insurer was to receive one-half of all sums received by Leger from Dresser. Then, for the first time, the jury was directed to determine the comparative negligence of the parties, since the damages remained fixed at $284,090. Having found Dresser liable for 45 percent, Continental 20 percent, DWC 0 percent, and Leger 35 percent contributory negligence, Dresser filed a motion to alter the judgment, requesting the court to afford Dresser a credit against the judgment for the full dollar amount of the settlement ($182,331.05 between Leger, DWC and Continental). The motion was denied and the court, in accord with rules which it later spelled out, entered judgment against Dresser for $127,840. That amount reflects the total damages of $284,090, reduced by.$99,430.17, representing the 35 percent contributory negligence of the plaintiff and by $56,817.24, representing 20 percent negligence attributed to Continental. In other words, Dresser was charged by the judgment to pay only the portion of the total damages proportionate to its percentage of negligence (45 percent of $284,090). The rules, announced by the trial judge reaching his conclusion, were reprinted in the Leger opinion, 592 F.2d at 1248. There, it will be noted, paragraph 6 as announced by Judge Hunter, the district judge, and approved by the Court of Appeals, reads as follows:
 
 
 26
 6. A settling party's negligence is considered only when he has been made a party to the suit. In such a case, the judgment awarded to the claimant against the non-settling defendant is credited with the dollar amount represented by the proportionate negligence, if any, attributed to the settling parties.
 
 
 27
 Appellants' first contention is that the Leger method of handling cases in which one of several joint tortfeasors has settled is inapplicable here, because the settling party, Chevron, was not a member of this suit. They point to the fact that the Court of Appeals discussed the case throughout as being one where the settling party was treated as a party to the suit. Moreover, and more importantly, the issue which is now before us was not present in Leger. So far as appears, the injured plaintiff, having obtained his judgment fixing damages of $284,090 was not heard to object to the second submission of the case to the jury for a determination of the comparative negligence of the parties. The appeal was by Dresser, and not by Leger. Thus, the Court of Appeals did not have before it a case in which the injured plaintiff raised the question as to the propriety of presenting to the jury upon the initial trial the question of percentage of liability of several joint tortfeasors. Moreover, the record seems to indicate that all parties were present and in court to defend their own relative positions at the time the percentage issue was being presented to the jury. There was thus no allocation of a percentage of liability (here 100 percent) against a person not present in court.
 
 
 28
 We also agree that if the mere language of the Leger case could be construed to authorize the proceedings conducted here by the trial court, then its effect as precedent has been weakened by Edmonds. Although the Edmonds case dealt with the amendment of the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 901 et seq., enacted by Congress in 1972, and therefore dealt with the liability of a shipowner vis-Ea-vis a longshoreman and his employer, the court repeatedly stated and restated the general admiralty law. The court said:As that law had evolved by 1972, a longshoreman's award in a suit against a negligent shipowner would be reduced by that portion of the damages assignable to the longshoreman's own negligence; but as a matter of maritime tort law, the shipowner would be responsible to the longshoreman in full for the remainder, even if the stevedore's negligence contributed to the injuries.[7]
 
 
 29
 7. See, e.g., Cooper Stevedoring Co. v. Kopke, Inc., 417 U.S. 106, 108, 113 (94 S.Ct. 2174, 2175, 2178, 40 L.Ed.2d 694) (1974) (longshoreman could have recovered entire damages from shipowner responsible for 50% of the total fault); Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282, 283 (72 S.Ct. 277, 278, 96 L.Ed. 318) (1952) (shipowner responsible for 25% of negligence required to pay 100% of damages and contribution unavailable from negligent shoreside contractor, an employer under the Act). See also The Atlas, 93 U.S. 302 (23 L.Ed. 863) (1876); The Juniata, 93 U.S. 337 (23 L.Ed. 930) (1876). We stated the common-law rule in The Atlas and adopted it as part of admiralty jurisprudence: "Nothing is more clear than the right of a plaintiff, having suffered such a loss, to sue in a common-law action all the wrong-doers, or any of them, at his election; and it is equally clear, that, if he did not contribute to the disaster, he is entitled to a judgment in either case for the full
 
 
 30
 amount of his loss."
 
 
 31
 443 U.S. at 260, 99 S.Ct. at 2756.
 
 The Court then said:
 
 32
 This latter rule is in accord with the common-law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident.[8]
 
 
 33
 8. Restatement (Second) of Torts §§ 433A; 857, and 879 (1965 and 1979); T. Cooley, Law of Torts 142-144 (1879); W. Prosser, Law of Torts § 47, pp. 297-299, and § 52, pp. 314-315 (4th ed. 1971); cf. Washington & Georgetown R. Co. v. Hickey, 166 U.S. 521, 527 (17 S.Ct. 661, 663, 41 L.Ed. 1101) (1897). A tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury. "Nor are the damages against him diminished." Restatement, supra § 879, comment a. Likewise, under traditional tort law, a plaintiff obtaining a judgment against more than one concurrent tortfeasor may satisfy it against any one of them. Id. § 886. A concurrent tortfeasor generally may seek contribution from another, id. § 886A, but he is not relieved from liability for the entire damages even when the nondefendant tortfeasor is immune from liability. Id. § 880. These principles, of course, are inapplicable when the injury is divisible and the causation of each part can be separately assigned to each tortfeasor. Id. §§ 433A(1) and 881.
 
 
 34
 443 U.S. at 260, 99 S.Ct. at 2756.
 
 
 35
 Finally, in discussing the question of whether the Court should feel free to change the law in this area, although Congress had not done so in the 1972 amendments, the Court said:
 
 
 36
 Though we recently acknowledged the sound arguments supporting division of damages between parties before the Court on the basis of their comparative fault, see United States v. Reliable Transfer Co., 421 U.S. 397 (95 S.Ct. 1708, 44 L.Ed.2d 251) (1975)....[30] (Emphasis added.)
 
 
 37
 30. As noted in n. 8, supra, the general rule is that a person whose negligence is a substantial factor in the plaintiff's indivisible injury is entirely liable even if other factors concurred in causing the injury. Normally, the chosen tortfeasor may seek contribution from another concurrent tortfeasor. If both are already before the court -(Emphasis added). for example, when the plaintiff himself is the concurrent tortfeasor or when the two tortfeasors are suing each other as in a collision case like Reliable Transfer -a separate contribution action is unnecessary, and damages are simply allocated accordingly. But the stevedore is not a party and cannot be made a party here, so the Reliable Transfer contribution shortcut is inapplicable. Contribution remedies the unjust enrichment of the concurrent tortfeasor, see Leflar, Contribution and Indemnity Between Tortfeasors, 81 U. Pa. L. Rev. 130, 136 (1932), and while it may sometimes limit the ultimate loss of the tortfeasor chosen by the plaintiff, it does not justify allocating more of the loss to the innocent employee, who was not unjustly enriched. See also H. Hart & A. Sacks, The Legal Process: Basic Problems in the Making and Application of Law 525 (ten.ed.1958). Our prior cases recognize that. Even before Reliable Transfer, we apportioned damages between vessels that collided and sued one another. Reliable Transfer merely changed the apportionment from equal division to division on the basis of relative fault. But we did not upset the rule that the plaintiff may recover from one of the colliding vessels the damage concurrently caused by the negligence of both. Compare Reliable Transfer Co. (Apportionment of damages on basis of relative fault between plaintiff and defendant who concurrently caused grounding), and The Schooner Catharine v. Dickinson, (58 U.S.) 17 How. 170 (15 L.Ed. 233) (1855) (equal apportionment of damages between libelant and respondent vessels where both at fault in collision), with The Atlas, 93 U.S. 302 (23 L.Ed. 863) (1876) (in suit by insurer of cargo against one of two ships whose concurrent fault caused collision, the insurer is entitled to recover in full, despite the rule of equal apportionment, because the insurer is not a wrongdoer), and The Juniata, 93 U.S. 337, 340 (23 L.Ed. 930) (1876) (same; if respondent vessel has any rights against nonparty vessel, they "must be settled in another proceeding").443 U.S. at 271-72, 99 S.Ct. at 2762 (emphasis in original).
 
 
 38
 It takes little imagination to realize the advantage to a plaintiff, such as these injured seamen were here, if the trial court, after hearing the evidence dealing with the alleged faults of the dredge, and the evidence of the collision, had charged the jury in the language of the The "Atlas", supra, as repeated in footnote 7 above: "If you find negligence on the part of Great Lakes and negligence on the part of other persons and if you find the injury to the plaintiffs was caused even partially by the negligence of the defendant, the plaintiff is entitled to recover the full amount of his damages from this defendant."
 
 
 39
 Since the plaintiff is entitled to recover, as stated by the Court, against either of several tortfeasors, without regard to the percentage of fault, it was error for the trial court to distract the juror's attention by requiring it to allocate the degree of fault between the defendant and a non-party. If the jury had found the causation in the negligence which it found against Great Lakes, and Great Lakes considered that the total amount of damages for the injuries received by these plaintiffs was disproportionate for it to bear, it could have obtained contributions against Chevron, as it had already undertaken to do, in a different proceeding. That issue was to be tried at a different time and between two live opponents, and not as part of the suit by the injured workman and representative of a deceased workman against their employer under the Jones Act.
 
 
 40
 The appellants also complain of charges incorrectly given and denial of a charge not given by the trial court. We leave these matters open for consideration first by the trial court upon remand. It is not clear from the relative representations of the parties to what extent this was a failure of the plaintiffs to object to the charges given and to what extent their complaint here is due to their later appreciation of the decision of the Court of Appeals for the Fifth Circuit in Reyes v. Vantage S.S. Co., 609 F.2d 140, 143 (5th Cir. 1981). Upon rehearing, this can be cleared up.
 
 
 41
 We also leave to the trial court in the first instance the solution of the question whether a party who agrees by contract to observe statutes and regulations which would not otherwise be binding on it is subject to the per se rule for failure to observe such statutes and regulations. No cases have been cited to us that resolve this question.
 
 
 42
 In addition, the appellants complain of the refusal of the trial court to admit in evidence proffered testimony that would tend to show post-accident activities in the nature of stricter compliance with the engineer's manual. The court held that this evidence would not be admissible as to the negligence counts although the trial judge said that if only unseaworthiness claims were before the court, this evidence could be admitted. The court then ruled out the evidence under Fed.R.Evid. § 403. This Rule provides as follows:
 
 
 43
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 44
 Whether the trial court was correct in concluding that such post-occurrence evidence would be admissible as to the unseaworthiness claims, we do not decide, because this determination would depend upon a much more careful analysis of that evidence than is contained in the briefs of the parties. However, we note that Rule 403 is to be very sparingly used for the purpose of ruling out otherwise relevant evidence. As stated by Weinstein:Since the trial judge is granted such a powerful tool by Rule 403, he must take special care to use it sparingly.... If there is doubt about the existence of unfair prejudice, confusion of issues, misleading, undue delay or waste of time, it is generally better practice to admit the evidence taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonition in the charge....
 
 
 45
 Vol. I, Weinstein & Burger, Weinstein's Evidence, § 403(01).
 
 
 46
 This is in accord with the rule applicable in this circuit. See Collins, By and Through Kay v. Seaboard Coast Line R. R. Co., 675 F.2d 1185 (11th Cir. 1982). If the trial court, on remand, decides that this evidence is admissible on the unseaworthiness claim, then it should not be ruled out merely because it is not applicable to the negligence claim. That fact can be made known to the jury by proper charge limiting the jury's consideration of it.
 
 
 47
 The judgment is REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Since the motion was not included in the pre-trial stipulation as to issues to be tried, the trial court offered the plaintiffs the opportunity to take a mistrial. In the alternative, the plaintiffs asked the trial court to certify that issue for an interlocutory appeal, but when this was denied, plaintiffs elected to proceed with the trial
 
 
 [2]
 See Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981)