Kenneth JOVOVICH, Cherie Jovovich, Plaintiffs,

**Lexington Insurance Company, as Subrogee of William L. Ferrell, Intervening Plaintiff-Appellant,**

v.

**DESCO MARINE, INC., Defendant-Third Party Plaintiff-Cross-Claim Defendant,**

**Whittaker Corporation, Defendant-Third Party Plaintiff-Appellee,**

**Brewer-Titchener Corporation, Defendant,**

**Joslyn Manufacturing & Supply Co., Defendant, Cross-Claim Plaintiff,**

**William L. Ferrell, Third-Party Defendant.**

No. 86–5188.

United States Court of Appeals, Eleventh Circuit.

Feb. 17, 1987.

Laurence F. Valle, Underwood, Gillis, Karcher & Valle, P.A., Miami, Fla., for intervening plaintiff-appellant.

Paul C. Huck, Proenza, White & Huck, P.A., Miami, Fla., for defendant-third party plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.

HATCHETT, Circuit Judge:

 In affirming the district court, we hold that in maritime cases damages are to be apportioned according to fault, with *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir.1979) applying to contribution and indemnity.

### Facts

On August 1, 1979, Kenneth Jovovich was injured while in the course and scope of his duties as a seaman aboard the vessel M/V "Battle Axe." The accident resulted from the rigging aboard the vessel failing, thereby causing Jovovich's left arm to be struck by a snatch block. The injury to his left arm resulted in amputation of the arm below the elbow.

Desco Marine, Inc. (Desco) designed and built the vessel. Desco, a division of the Whittaker Corporation (Whittaker), sold the vessel to William L. Ferrell. Ferrell was co-owner and master of the vessel on the day of the accident.

Jovovich brought a lawsuit against Ferrell for unseaworthiness. Lexington Insurance Company (Lexington), Ferrell's marine underwriter, settled Jovovich's claim for the policy limits of $300,000.

Thereafter, Jovovich and Lexington brought a claim against Whittaker for negligence, strict liability, and breach of warranty and against Joslyn Manufacturing Corporation (Joslyn), the manufacturer of the snatch block. Whittaker and Joslyn filed a third-party complaint against Ferrell for the purpose of determining the nature and extent of Ferrell's negligence, if any, as provided by the *Leger* doctrine. Whittaker moved for summary judgment against Lexington and Ferrell contending that Lexington had no right to contribution or indemnity from Whittaker. The district court granted Whittaker's motion for summary judgment. Lexington appeals.

This appeal presents one issue: Whether a settling defendant in a maritime action is entitled to seek indemnity from non-settling defendants if, upon apportionment of liability at trial, it is determined that a defendant's settlement was greater than its proportionate share of a judgment would have been had it not settled and proceeded to trial.

### Discussion

All parties agree that the principles established in *Leger* are controlling as to contribution. Lexington's position is simply stated: *Leger* is a case involving contribution and does not control the method of apportioning damages among settling and non-settling defendants in maritime actions based upon indemnity.

In the initial lawsuit brought by Jovovich against Ferrell for unseaworthiness, Lexington settled the claim for the policy limits of $300,000. Whittaker and Joslyn sought to have determined, pursuant to Federal Rule of Civil Procedure 14(c), the extent of Ferrell's possible negligence.

In *Leger*, the Fifth Circuit noted six rules as relevant in determining the percentage of negligence among potential joint tort feasors. One rule states:

> (2) The Federal Rules of Civil Procedure has liberalized joinder [footnote omitted] and impleader rules in maritime claims to facilitate the presence of all interested parties in one action. All potential joint tort feasors may be made third party defendants, pursuant to rule 14(c). Application of the rule in this manner is the only possible interpretation of it consistent with its purpose and intent.

*Leger*, 592 F.2d at 1248.

██ Lexington contends that if Ferrell is found free of any negligence after the court or a jury fixes proportionate percentages of negligence among the parties, Lexington should be indemnified for the $300,000 which it overpaid in settlement, plus costs and attorney's fees. Lexington's contention is without merit for two reasons.

First, Lexington, in bringing its claim against Whittaker and Joslyn, may assert only rights or defenses against Whittaker and Joslyn which Lexington acquired upon its settlement of Jovovich's claim against Ferrell. *Hartford Fire Ins. Co. v. Chicago, M & St. P.R. Co.*, 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84 (1899).[1] Lexington, possessing only those rights which it acquired from Ferrell, does not have a claim of indemnification against Whittaker or Joslyn. *Hartford*, 175 U.S. 91, 20 S.Ct. 33. If Ferrell and Whittaker had been joined as defendants in Jovovich's original action, and Ferrell had settled, but later a jury had found Ferrell free of any negligence, Ferrell certainly would not have a claim against Whittaker for the amount it paid in settlement.

Second, if Ferrell is found 1–percent, 10–percent, 50–percent, or 100–percent negligent, Lexington is not entitled to indemnification or contribution under *Leger*.

The language in *Leger* which persuasively addresses Lexington's claim regarding unjust enrichment (double recovery) states:

> In this case, Leger did not receive a double recovery for his injuries. In accord with its ground rules, the trial court rendered judgment against Dresser for $127,840, representing Dresser's percentage of negligence (45%) multiplied by Leger's damages as found by the jury ($284,090). [Footnote omitted.] Although Leger nominally received $310,171.05 by virtue of the settlement and the judgment, we do not consider this a double recovery. Leger merely obtained a favorable settlement.

*Leger*, 592 F.2d at 1250. We likewise conclude that the potential for unjust enrichment is absent in this case.

In *Leger*, the court noted that settlement dollars and judgment dollars cannot be equated. *Leger*, 592 F.2d at 1250 n. 10. A defendant settles to measure and limit liability and risk. In this case, Lexington was free to assess its potential liability and exposure prior to settling. The court in *Leger* held that settling parties assume the finality and potential benefit and risk of their settlement decision, and "whether the plaintiff or any of the defendants are ultimately found to have made a favorable settlement, we will 'respect the aleatory nature of the settlement process....'" *Leger*, 592 F.2d at 1250–51 (quoting *Doyle v. United States*, 441 F.Supp. 701, 711 n. 5 (D.S.C.1977)).

---

1. Also, we note that 44 Am.Jur.2D *Insurance* § 1795 (1982) provides in part:

   § 1795.—Extent of right; dependence upon rights of insured.

   The insurer's right of subrogation against third persons causing the loss paid by the insurer to the insured does not rest upon any relation of contract or privity between the insurer and such third persons, but arises out of the contract of insurance and is derived from the insured alone. Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses.

In this circuit, *Leger* applies to all theories of maritime liability apportionment including indemnity and contribution.

The district court properly granted Whittaker's motion for summary judgment. We affirm.

**AFFIRMED.**