**GREAT LAKES DREDGE & DOCK COMPANY, Plaintiff–Appellant,**

v.

**TANKER ROBERT WATT MILLER, Defendant–Appellee.**

**Complaint of CHEVRON TRANSPORT CORPORATION, as owner of the S/S ROBERT WATT MILLER, in an action for exoneration from or limitation of liability, Plaintiff.**

**GREAT LAKES DREDGE & DOCK CO., a corporation, Plaintiff–Appellant,**

v.

**CHEVRON SHIPPING COMPANY and Italia Societe Per Az Di Nav., Defendants–Appellees.**

No. 90–3466.

United States Court of Appeals, Eleventh Circuit.

April 16, 1992.

Courtney Wilder Stanton, Jacksonville, Fla., John Michael Kops, Warren M. Faris, John M. Futrell, New Orleans, La., for plaintiff-appellant.

G. Morton Good, Henry H. Bolz, Miami, Fla., Allen Vlcek, Sullivan & Vlcek, Jacksonville, Fla., for defendant-appellee.

Before COX and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

COX, Circuit Judge:

Great Lakes Dredge & Dock Co. ("Great Lakes") appeals the district court's grant of summary judgment in favor of Chevron Transport Corp. and Chevron Shipping Corp. (collectively referred to as "Chevron"). For the reasons discussed below, we reverse and remand.

### I. Facts and Procedural Background

This appeal marks the third time this matter has come before this court. The background and facts of this case were extensively detailed by the district court in *In re Chevron Transport Corp.*, 613 F.Supp. 1428 (M.D.Fla.1985), *aff'd in part and rev'd in part Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540 (11th Cir.1987), and by this court in *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716 (11th Cir.1982), *cert. denied* 460 U.S. 1083, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983), and *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540 (11th Cir.1987), *cert. denied* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). Accordingly, the following factual summary is limited to those issues currently before the court.

In February 1975, the *Robert Watt Miller*, a tanker owned by Chevron Transport Corp. and operated by Chevron Shipping Corp., collided with the *Alaska*, a dredge owned by Great Lakes, in the St. Johns River near Jacksonville, Florida. As a result of the collision, eight crewmen of the *Alaska* were injured and two lost their lives.

The injured crewmen and the estates of the deceased filed separate suits against Great Lakes under the Jones Act and general maritime law. Great Lakes in turn filed third-party complaints against Chevron for contribution, indemnity, and damage to the *Alaska*. Meanwhile, Chevron settled with the injured crewmen and the estates of the deceased crewmen for a total of $707,800.

The district court severed the third-party claims against Chevron and tried before a jury the cases against Great Lakes. After a verdict was returned in favor of Great Lakes, the crewmen and estates appealed to this court. They argued that the district court erred in framing special interrogatories submitted to the jury. Those interrogatories asked the jury to determine the comparative degrees of fault of Great Lakes and Chevron, which was not a party to the suit. We reversed and remanded for a new trial, *Ebanks*, 688 F.2d at 722, saying:

> Since the plaintiff is entitled to recover, as stated by the Court, against either of several tortfeasors, without regard to the percentage of fault, it was error for the trial court to distract the juror's attention by requiring it to allocate the degree of fault between the defendant and a non-party. If the jury had found the causation in the negligence which it found against Great Lakes, and Great Lakes considered that the total amount of damages for the injuries received by these plaintiffs was disproportionate for it to bear, it could have obtained contributions against Chevron, as it had already undertaken to do, in a different proceeding. That issue was to be tried at a different time and between two live opponents, and not as part of the suit by the injured workman and representative of a deceased workman against their employer under the Jones Act.

*Id.*

After that decision, Great Lakes settled with all the claimants except the estate of Danny Self for a total of $943,199. The Self claim, brought by his widow Vivian Self, was then heard in conjunction with Great Lakes's claims against Chevron. The district court concluded that Great Lakes was 30% responsible and Chevron was 70% responsible. It also found Self's total damages to be $661,354. Because Self had already settled with Chevron

(which was 70% responsible), the district court limited Self's recovery against Great Lakes to 30% of her damages or $198,406.

On appeal, this court rejected the district court's limitation of Self's recovery to the percentage of Great Lakes's fault. We held the district court's reliance on *Leger v. Drilling Well Control, Inc.*, 592 F.2d 1246 (5th Cir.1979), for such a limitation was misplaced because that case was inconsistent with the principles of joint and several liability subsequently discussed by the Supreme Court in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979).[1] *Self*, 832 F.2d at 1545–48. We held that Self was entitled to recover her entire damages from Great Lakes, regardless of its percentage of fault, with a credit for the dollar amount ($315,000) of the settlement paid by Chevron, not a credit based upon Chevron's percentage of fault. *Id.* We also concluded that the district court underestimated the amount of Self's damages through faulty assumptions about her husband's pain and suffering and his future earnings potential. As a result, Self was likely to recover far more than the $198,406 judgment entered by the district court.

Great Lakes subsequently settled with the Self estate for $2,050,000. The sole remaining issue was Great Lakes's claims for contribution from Chevron.[2] Great Lakes maintained that it was forced to pay far more than its proportionate share of all of the personal injury and wrongful death claims. The district court granted Chevron's motion for summary judgment on the contribution claims under the so-called "settlement bar" rule. The settlement bar rule prohibits one joint tortfeasor from seeking contribution from another joint tortfeasor who has settled with the injured party. The district court also held that Great Lakes's claims for contribution were barred because Great Lakes itself had set-

---

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. Chevron had been granted summary judgment on Great Lakes's claims for indemnity, and the parties had settled their claims for damages to the *Alaska* and the *Robert Watt Miller*.

tled with the personal injury and death claimants. Great Lakes appeals.

## II. Issues on Appeal

Great Lakes contends that the district court erred in granting Chevron summary judgment on Great Lakes's contribution claims. Resolving this issue requires that we answer two questions:

1) Whether a settlement bar rule precludes a joint tortfeasor from seeking contribution from another joint tortfeasor who has settled with the injured party?

2) Whether, under what may be called a "settler barred" rule, a joint tortfeasor who has settled with the injured party may seek contribution from another joint tortfeasor?

## III. Contentions of the Parties

Chevron argues that in *Self* this court held a settling joint tortfeasor is relieved of all further liability for contribution to other joint tortfeasors. The settlement bar rule, therefore, is both the law of this circuit and the law of the case. Chevron further argues that Great Lakes's claims for contribution are barred by Great Lakes's own settlement with the injured parties and the estates.

Great Lakes, on the other hand, contends that any discussion of the settlement bar rule in *Self* was dicta and not binding on the parties. Furthermore, adoption of a settlement bar rule is inconsistent with the Supreme Court's maritime precedent. Great Lakes also argues that Great Lakes's own settlement does not bar its action against Chevron for contribution.

## IV. Standard of Review

■ The district court's grant of summary judgment is subject to *de novo* review by this court. *See Shipes v. Hanover Ins. Co.,* 884 F.2d 1357 (11th Cir.1989). Summary judgment is appropriate where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## V. Discussion

### A. The Law of the Case Doctrine

■ This court's opinion in *Self* did indeed suggest that Great Lakes's action for contribution may be barred by Chevron's settlement with the injured parties. *Self,* 832 F.2d at 1547. This issue, however, was not before the court at that time. As we noted, "Great Lakes retained, of course, a right to contribution from Chevron.... In the case below, the district court granted partial summary judgment on the issue of indemnity, and left the possibility of contribution available. We affirm the district court on this point." *Id.* at 1556–57. Because the issue of contribution and the settlement bar rule had not yet been resolved by the district court, the discussion in *Self* was dicta. As such, it is neither the law of the case nor binding precedent. We are therefore free to give that question fresh consideration.

### B. Historical Background

■ Before addressing the settlement bar question directly, it is necessary to briefly review the historical evolution of the law regarding distribution of liability among joint tortfeasors in maritime actions. At common law, contribution among joint tortfeasors was not recognized. In admiralty, however, a limited right to contribution has been recognized for more than 135 years. *See, e.g., The Schooner Catharine v. Dickinson,* 58 U.S. (17 How.) 170, 15 L.Ed. 233 (1855). Under the admiralty "divided damages" rule, if two vessels were both at fault for a collision, each was held responsible for one-half of the total damage. Although damages for the collision were shared among the joint tortfeasors, liability was not based on the parties' relative degrees of fault.

In 1974, the Supreme Court established the modern right to contribution among joint tortfeasors in maritime personal injury cases. *Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). A year later, the Court abandoned the divided damages rule in collision cases and adopted a comparative negligence approach. *United States v. Reli-*

*able Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). The Court held that liability should be distributed among the parties according to each party's comparative degree of fault. *Id.* at 411, 95 S.Ct. at 1715. The same proportionate fault rule applies in personal injury cases. *Id.* at 409, 95 S.Ct. at 1714.

A difficult problem arises in the personal injury context when one of the joint tortfeasors settles with the victim. What effect should that settlement have on the liability of the remaining joint tortfeasors? It is generally agreed that non-settling joint tortfeasors are entitled to have a judgment against them reduced by the amount of any settlement. Otherwise, the injured party would receive a double recovery. There is a split of authority, however, over how to calculate the settlement credit. Some courts use a *pro rata* approach under which the non-settling joint tortfeasor receives a credit based upon the percentage of the settling party's fault. Other courts apply a *pro tanto* approach and give a credit for the actual dollar amount of the settlement. A simple hypothetical will demonstrate the effect of these two methods.

Assume, for example, that the negligence of A and B combine to injure C, who then files a lawsuit against A and B. On the morning of trial A settles with C for $50,000. The jury subsequently finds that A was 75% responsible[3] and B was 25% responsible for the accident and that C's damages totaled $100,000. If neither party had settled, judgment would be entered against A for $75,000 and B for $25,000. But given A's settlement for $50,000, how much should B pay? Under a *pro rata* approach, B would receive a credit for 75% of C's damages ($75,000) because A, the settling joint tortfeasor, was 75% responsible for the accident. Thus, B would owe $25,000 ($100,000–$75,000) to C. Under the *pro tanto* approach, B would only receive a credit for the dollar value of A's settlement

($50,000). Therefore, B would owe $50,000 ($100,000–$50,000) to C. Clearly, the manner in which the settlement credit is calculated has a significant effect.

Prior to *Cooper Stevedoring* and *Reliable Transfer,* courts generally applied the *pro tanto* approach. *See, e.g., Billiot v. Sewart Seacraft, Inc.,* 382 F.2d 662 (5th Cir.1967). The former Fifth Circuit was the first appellate court to reconsider this issue in light of these Supreme Court decisions. In *Leger,* that court overruled *Billiot* and adopted the *pro rata* approach. "The reasoning of *Reliable Transfer* loses none of its cogency in the context of a non-collision personal injury case. Likewise, we can see no basis for rejecting the *Reliable Transfer* reasoning simply because one or more of the potential defendants has settled with the injured party." *Leger,* 592 F.2d at 1249. The court granted the non-settling defendant a credit based on the percentage of fault of the settling joint tortfeasor. The non-settling party, therefore, was forced to bear damages based upon its degree of fault.

It should be noted that the settling joint tortfeasor in *Leger* actually paid about $25,000 more than what its proportionate share of the damages would have been had it gone to trial. As a result, the plaintiff's compensation under the *pro rata* approach exceeded his actual damages as determined by the jury. The court rejected the non-settling defendant's argument that, by not using the *pro tanto* approach, the plaintiff was receiving a double recovery. The court held that the plaintiff merely made a favorable settlement and only recovered once for each tortfeasor's percentage of fault. *Id.* at 1250. It noted that both the plaintiff and the settling defendant chose to accept a fixed sum rather than to risk the uncertainty of a jury trial. "At the time of the settlement negotiations, no one knew how a jury would apportion fault or in what amount it would find damages. By

---

**3.** The former Fifth Circuit noted in *Leger* that "potential joint tortfeasors who have settled may be joined under Rule 19 in order to assess pro rata damages." *Leger,* 592 F.2d at 1248 n. 3. *Cf. Ebanks,* 688 F.2d at 723 (holding that special interrogatory regarding comparative degree of fault between Great Lakes and Chevron was not appropriate where Chevron was not a party to the action).

settling with Continental and DWC, Leger took the risk that he was foregoing a larger amount possibly to be obtained at trial." *Id.*

Two months after the opinion in *Leger* was announced, the Supreme Court decided *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). In *Edmonds,* a longshoreman was injured in an accident for which the jury determined he was 10% at fault, his employer (via another employee's negligence) was 70% at fault, and the shipowner was 20% at fault. The longshoreman collected benefits from his employer under the Longshoremen's and Harbor Worker's Compensation Act (LHWCA), which provides statutory benefits in exchange for the loss of the right to sue the employer for negligence. The longshoreman filed suit against the shipowner. The jury found the longshoreman's total damages to be $100,000. The district court entered judgment against the shipowner for $90,000, which represented the $100,000 of damages less a 10% credit ($10,000) for the longshoreman's contributory negligence.

The shipowner argued that it should only be liable for $20,000, which is that portion of the damages attributable to its 20% fault. The Supreme Court, however, held that the Longshoremen's Act did not modify the pre-existing admiralty rule that a longshoreman may recover the full measure of his damages from a shipowner who is partially responsible for an accident. *Id.* at 266. Unfortunately for the shipowner, it was also barred by the exclusive remedy provision of the LHWCA from seeking contribution from the employer who was 70%

responsible. The Court sympathized with the shipowner's argument that it was being forced to bear more than its fair share, concluding that "[s]ome inequity appears inevitable in the present statutory scheme, but we find nothing to indicate and should not presume that Congress intended to place the burden of the inequity on the longshoreman whom the Act seeks to protect." *Edmonds,* 443 U.S. at 270, 99 S.Ct. at 2761.

Citing *Edmonds* by analogy,[4] this court overruled *Leger's pro rata* approach and returned to the *pro tanto* method. *Self,* 832 F.2d at 1548. The court candidly admitted that the *pro tanto* method may cause a joint tortfeasor to pay more damages than were actually caused by its proportionate share of fault. Nevertheless, "[t]he philosophy governing *Edmonds* is clear: any inequity which results from the implementation of a seaman's damage award should be borne by the tortfeasors rather than the seaman himself." *Id.* at 1546. This court concluded that the *Edmond's* philosophy requires the non-settling joint tortfeasor to bear a disproportionate burden even when the "inequity" was caused by the seaman's own imprudent settlement with another joint tortfeasor for less than its fair share of the damages.

With this background in mind, we now turn to the central issue on this appeal: Whether, given the *pro tanto* method adopted in *Self,* a joint tortfeasor who is forced to bear more than its fair share of an injured party's damages is prohibited by a settlement bar rule from seeking contribution from a settling joint tortfeasor.

---

**4.** *Edmonds* clearly does not overrule *Leger* directly. *See, e.g., Self,* 832 F.2d at 1546. In *Leger,* the injured party voluntarily chose to settle with one of the joint tortfeasors. The liability of the non-settling joint tortfeasor, therefore, was reduced proportionately. In *Edmonds,* on the other hand, the injured party was barred by the statutory scheme from suing his employer for full damages (in exchange for a guaranteed limited recovery regardless of fault). Accordingly, the victim was permitted to recover his entire damages from the shipowner which was partially responsible for the accident.

The Eighth Circuit relied upon this distinction between a voluntary settlement and a statutory bar for holding that *Edmonds* did not overrule *Leger.* That court then compared the various methods for distributing liability among joint tortfeasors and concluded that "the *Leger* panel's proportional fault approach is the best...." *Associated Electric Co-op. v. Mid-America Transportation Co.,* 931 F.2d 1266, 1271 (8th Cir. 1991). This court, however, is bound by its earlier decision in *Self. See, e.g., Robinson v. Tanner,* 798 F.2d 1378 (11th Cir.1986), *cert. denied* 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987).

## C. The Settlement Bar Rule

■ The Ninth Circuit accurately summarized the confusion surrounding the maritime settlement bar rule in *Miller v. Christopher*, 887 F.2d 902 (9th Cir.1989). "We sympathize with the district court's difficulties in finding guidance from controlling authority on the settlement bar issue. There is none." *Id.* at 903. The court noted that there are three possible solutions to the question:

(1) allowing an action for contribution against a settling tortfeasor by any other tortfeasor who has paid more than his equitable share of the plaintiff's claim;

(2) imposing a bar to contribution claims against a settling tortfeasor, perhaps in conjunction with a requirement that the settlement be in "good faith"; and

(3) reducing the claim of the plaintiff by the pro rata share of a settling tortfeasor's liability for damages, which has the effect of eliminating any reason to sue a settling tortfeasor for contribution.

*Id.* at 905 (citing Restatement (Second) of Torts § 886A cmt. m (1977)). Other circuits have failed to reach a consensus on this issue. *See, e.g., Associated Electric Co-op.*, 931 F.2d at 1266 (8th Cir.1991) (adopting third approach); *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279 (7th Cir.1992) (rejecting third approach but not deciding between first and second); *Miller v. Christopher*, 887 F.2d 902 (9th Cir.1989) (rejecting first approach but not deciding between the second and third). Of course, this same issue arises in tort law generally. The Restatement (Second) of Torts refuses to take a position on the issue. Restatement (Second) of Torts § 886A Caveat. The Restatement notes that each approach has drawbacks and that no one is satisfactory. *Id.* § 886A cmt. m.

Chevron argues, and the dicta in *Self* suggests, that this issue is controlled by *Luke v. Signal Oil & Gas Co.*, 523 F.2d 1190 (5th Cir.1975). In *Luke*, the court held that under Louisiana law joint tortfeasors lose their right of contribution against those tortfeasors who have settled with the plaintiff. *Id.* at 1191. This conclusion, however, was premised upon the fact that "since the plaintiff has deprived the unreleased tortfeasor of his right to enforce contribution, the amount recoverable against the unreleased tortfeasor is reduced *pro rata.*" *Id.* (emphasis added). The settlement bar rule applied in *Luke* was subsequently incorporated into the maritime proportionate liability scheme adopted in *Leger. See Leger*, 592 F.2d at 1248 n. 4; *see also Self*, 832 F.2d at 1547.

*Self*, however, overruled *Leger* and rejected the proportionate distribution of liability. Accordingly, the third approach described above is not available. This court, therefore, must choose between the first and second approaches—permitting an action for contribution or adopting some kind of settlement bar rule. Permitting contribution ensures that liability will be shared by all joint tortfeasors in proportion to their respective degrees of fault. Critics, however, argue that it may discourage settlements because the settling tortfeasor still faces litigation and potential liability to non-settling joint tortfeasors. Adopting a settlement bar rule, on the other hand, generally encourages at least partial settlements. Non-settling tortfeasors, however, may be forced to pay far more than their proportionate share of damages. Given the necessity of deciding between these two approaches, we select the former and reject the adoption of a settlement bar rule. *See Drake Towing Co. v. Meisner Marine Constr. Co.*, 765 F.2d 1060, 1068 (11th Cir. 1985) (holding implicitly that non-settling joint tortfeasor had right to contribution from settling tortfeasor); *see also Donovan v. Robbins*, 752 F.2d 1170, 1181 (7th Cir.1985) (stating "traditional rule is that ... a settlement does not limit the nonsettling defendants' right to contribution").

Permitting contribution is clearly supported by the Supreme Court's decision in *Reliable Transfer*. As discussed above, the Court in *Reliable Transfer* held that liability among joint tortfeasors in maritime actions should be distributed according to their comparative degree of fault. *Reliable Transfer*, 421 U.S. at 411, 95 S.Ct. at 1715–16. The public policy underlying this quest for a "just and equitable" alloca-

tion of damages is not eroded by the fact that the party from whom contribution is sought has settled with the victim. Requiring each party to bear that portion of the damages caused by its own negligence guarantees an efficient level of deterrence against future negligence. If a negligent party was forced to pay more or less than its fair share, future negligence would be either over- or under-deterred. *See, e.g., Smith & Kelly Co. v. The S/S Concordia Tadj*, 718 F.2d 1022, 1029–30 (11th Cir. 1983) (stating that "[t]he clear trend in maritime cases is to reject all-or-nothing or other arbitrary allotments of liability in favor of a system that divides damages on the basis of the relative degrees of fault" and that such a system "matches the power of its incentives to the ability of each party to prevent injury"); *Reliable Transfer*, 421 U.S. at 405 n. 11, 95 S.Ct. at 1713 (noting that comparative fault "imposes the strongest deterrent upon the wrongful behavior that is most likely to harm others"). Allowing an action for contribution is also consistent with *Edmonds.* The injured party is assured of full compensation for his damages (less a deduction for any contributory negligence) and is unaffected by any subsequent action among the joint tortfeasors for contribution.

Chevron argues that allowing contribution will discourage settlements because the settling party may still face liability to the non-settling joint tortfeasors for contribution. The deterrent effect on settlements, however, is far from clearly established. *See, e.g.,* Unif.Comp.Fault Act § 6 cmt., 12 U.L.A. 55 (Supp.1991) (stating that "[w]hile [the settlement bar rule] theoretically encourages settlements, it may be unfair to other defendants and if the good-faith requirement is conscientiously enforced settlement may be discouraged."). Furthermore, the potential negative side effects of the settlement bar rule outweigh its purported advantage.

The *pro tanto* approach may encourage irresponsible settlements by plaintiffs. If we then apply a settlement bar rule, we force non-settling defendants to bear a disproportionate share of liability. When a single tortfeasor causes an injury and the parties settle, both the plaintiff and the defendant accept the certainty of a fixed result in exchange for forgoing the chance of a more favorable outcome at trial. The balancing of risk by both sides of the bargaining table ensures that the result is equitable. This, however, is not the case with multiple tortfeasors under the *pro tanto* approach. The plaintiff is free to accept the certainty of a settlement *without* losing the chance of obtaining more at trial. If it turns out that the plaintiff settled for too little from one defendant, he automatically recovers the shortfall from the non-settling defendants. *See supra* at 1579 (describing effect of the *pro tanto* approach). The normal balancing of risks by both sides is disrupted. *See, e.g., In re Oil Spill by the Amoco Cadiz*, 954 F.2d at 1314. The party who makes the decision relative to settlement is not the party who bears the responsibility for that decision. If we apply a settlement bar rule in this situation, the defendants will be unable to equitably divide liability among themselves. It will be the non-settling defendants, not the plaintiff or the settling defendant, who bear the risk that the plaintiff settled for too little.

Assuming, *arguendo*, that rejecting the settlement bar rule has a slight disincentive effect upon settlements, we nevertheless authorize an action for contribution. The Supreme Court came to a similar conclusion when it adopted the doctrine of comparative fault in *Reliable Transfer.* "[The argument against comparative fault] asks us to continue the operation of an archaic rule because its facile application out of court yields quick, though inequitable, settlements, and relieves the courts of some litigation." *Reliable Transfer,* 421 U.S. at 408, 95 S.Ct. at 1714; *see also Donovan,* 752 F.2d at 1181 (noting that a settlement bar rule may "encourage settlement, all right, but it would be contrary to the spirit of contribution, since it would allow guiltier defendants to get off cheaply by settling first").

For the reasons discussed above, therefore, we reject the settlement bar rule in admiralty. We hold that an action for con-

tribution against a settling tortfeasor may be maintained by a non-settling joint tortfeasor that has paid more than its share of the plaintiff's damages based upon the respective degrees of fault.

#### D. The "Settler Barred" Rule

■ Citing *Jovovich v. Desco Marine, Inc.*, 809 F.2d 1529 (11th Cir.1987), Chevron also argues that Great Lakes's claims for contribution are prohibited by Great Lakes's own settlement with the injured crewmen and estates under what may be called a "settler barred" rule. In *Jovovich*, a seaman was injured when the rigging aboard his vessel failed, allegedly due to the combined fault of the vessel's master and designer and the equipment manufacturer. He sued the master of the vessel, whose insurance company settled for the policy limits of $300,000. The insurance company and the seaman then brought suit against the manufacturer of the equipment and the designer of the vessel. The insurance company, which sued on the behalf of the vessel's master, claimed a right to contribution or indemnity for its settlement if it was determined at trial that its settlement was greater than what its proportionate share of the judgment would have been had it not settled and gone to trial. *Jovovich*, 809 F.2d at 1530.

Under the proportionate liability scheme of *Leger*, this court held that the insurance company was not entitled to contribution. *Jovovich*, 809 F.2d at 1531. The insurance company had been free to assess its potential liability prior to settlement. "The court in *Leger* held that settling parties assume the finality and potential benefit and risk of their settlement decision...." *Id.* The fact that the insurance company might have settled its portion of liability unfavorably does not give it a right to contribution from the non-settling joint tortfeasors. *Id.*

*Jovovich* did not establish a broad "settler barred" rule. Rather, it merely noted that, given proportionate liability under *Leger*, the settling joint tortfeasor could not possibly be entitled to contribution. A claim for contribution presupposes that one

is forced to pay more than one's proportionate share of damages. The insurance company in *Jovovich* merely settled its insured's portion of liability. The insured was not held liable for more than its fair share of the damages. The insurance company must bear the risk that it overestimated that share and settled for more than it would have been forced to pay had it gone to trial.

*Jovovich* is not controlling in the case at bar. As noted above, this court has rejected the *Leger* approach. Great Lakes, therefore, might well have been forced to pay far more than its proportionate share of damages. Accordingly, notwithstanding the fact that Great Lakes itself settled with the claimants, Great Lakes may be entitled to contribution from Chevron.

In *Wisconsin Barge Line, Inc. v. The Barge Chem 300*, 546 F.2d 1125 (5th Cir. 1977), a seaman sued his employer for injuries subsequently determined to have been caused by a third party. The employer requested that the third party defend the lawsuit, but the third party never responded. The employer then entered into a court approved settlement with the injured seaman for $32,419. In a separate action for indemnity from the third party, the third party claimed that the employer was not entitled to indemnification for its settlement. *Id.* at 1126.

The court rejected the third-party's argument that, absent a judgment, the employer was not required to pay the employee's damages. "[I]n the facts of the instant case, appellant's payment to the claimant could hardly be said to be 'voluntary' in the sense of there being no legal liability, with the result of foreclosing indemnification." *Id.* at 1129. The court held that the employer was entitled to indemnity for its settlement payment if the settlement amount was reasonable. *Id.* at 1130. We recently reiterated this principle in *Weissman v. Boating Magazine*, 946 F.2d 811 (11th Cir.1991).

[A] settling indemnitee can recover from an indemnitor upon proof of the indemnitee's potential liability if the settlement terms are reasonable and if the indemni-

tor has notice of the suit, and has failed to object to those terms even though he has had a reasonable opportunity to approve or disapprove the settlement.

*Id.* at 813 (quoting *Burke v. Ripp*, 619 F.2d 354, 360 (5th Cir.1980)).

The doctrine which permitted indemnity despite settlement was extended to an action for contribution in *Adams v. Texaco, Inc.*, 640 F.2d 618 (5th Cir.1981). In *Adams*, a negligent employer was entitled to recover contribution from a joint tortfeasor for maintenance and cure benefits paid to an injured seaman. *Id.* at 621. Citing *Wisconsin Barge Line*, the court specifically noted that "[the shipowner's] settlement with Adams does not affect Texaco's liability to proportionately reimburse [the shipowner] for its maintenance and cure payments." *Id.* at 621 n. 5. *See also Smith & Kelly*, 718 F.2d at 1030 (authorizing action for contribution by stevedore which had settled with injured seaman).

We also note that permitting Great Lakes's contribution action despite its settlement is consistent with *Reliable Transfer*. As discussed above, liability in maritime actions should be distributed according to the parties' comparative degrees of fault. *Reliable Transfer*, 421 U.S. at 411, 95 S.Ct. at 1715. If Great Lakes paid more

than its proportionate share, it might well be entitled to contribution from Chevron. We hold that Great Lakes's claims for contribution from Chevron are not barred by the fact that Great Lakes itself settled with the injured crewmen and estates. We do not address whether Great Lakes ultimately will be entitled to receive contribution from Chevron because the district court has not yet had an opportunity to decide this issue.[5]

## VI. Conclusion

For the reasons discussed above, we reject both the settlement bar and "settler barred" rules in maritime actions for contribution under the *Self pro tanto* approach. The district court's grant of summary judgment in favor of Chevron on Great Lakes's claims for contribution is reversed. The case is remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

5. Chevron maintains that there has never been a judicial determination of the victim's damages or the relative degrees of fault between itself and Great Lakes and that the dollar value of the parties' settlements can not be equated since they occurred at different points in time. It suggests that the district court must, in effect, hold a new trial on all of the plaintiffs' claims in order to resolve Great Lakes's claims for contribution. Great Lakes, on the other hand, argues that the various settlements are presumptive proof of the victim's damages unless it is shown that the settlements were not reasonable. It further asserts that the district court has already determined the relative degrees of fault between Chevron (70%) and Great Lakes (30%) for the injuries. *See In re Chevron Transport Corp.*, 613 F.Supp. 1428 (M.D.Fla.1985). We leave initial consideration of these issues to the district court on remand.