[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 09, 2003
THOMAS K. KAHN
CLERK

_____

No. 02-11574
_____

D. C. Docket No. 01-10009-CV-SH

TERRY P. MURPHY,
STEVEN A. MURPHY, as co-personal
representatives of the Estate of Brendan
M. Murphy, and as parents and natural
guardians of Steven A. Murphy, Jr., a minor,

Plaintiffs,

versus

FLORIDA KEYS ELECTRIC COOPERATIVE ASSOCIATION,
INC.,

Defendant-Third-Party-Plaintiff-
Counter-Defendant- Appellant,

versus

RAYMOND ASHMAN, III,
Individually and as parent and natural guardian,
of Raymond Ashman, IV, a minor child,

Third-Party-Defendant- Counter-
Claimant-Appellee,

STEVEN A. MURPHY, SR., et al.,

Third-Party-Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(May 9, 2003)**

Before BIRCH, CARNES and BRUNETTI*, Circuit Judges.

CARNES, Circuit Judge:

The issue in this appeal is whether the defendant in an admiralty tort[1] action who settles with the plaintiff without obtaining a release from liability for other potential defendants can then be entitled to contribution from them toward the amount it paid to settle its own liability. Putting the Supreme Court's decision in McDermott, Inc. v. AmClyde, 511 U.S. 202, 114 S. Ct. 1461 (1994), together with our decision in Jovovich v. Desco Marine, Inc., 809 F.2d 1529 (11th Cir. 1987), we conclude that a settling defendant cannot bring a suit for contribution against a nonsettling defendant who was not released from liability to the plaintiff by the settlement agreement.

---

*Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1]We use the term "admiralty tort" in the first part of this opinion to mean a tort asserted under a federal court's admiralty jurisdiction. Later in the opinion, we use the term "maritime tort," which is a species of tort which can be brought under a federal court's admiralty jurisdiction, although it need not be.

2

That is the simple bottom line of our decision, and it is a result that makes good sense, but how our circuit law has gotten to that point is anything but simple. Instead of following a straight path our decisions on contribution in admiralty cases having lurched back and forth like a drunken sailor. After we set out the facts and procedural history, we will explain the proportionate share approach to apportioning liability among joint tortfeasors and why contribution is not available from nonsettling tortfeasors under that approach, and then explain why we conclude that our <u>Jovovich</u> decision is once again good law. There is also an issue in this case about the district court's dismissal of a counterclaim brought under the supplemental jurisdiction of the court, which we will take care of at the end of the opinion.

The facts leading up to these legal issues began shortly after midnight on July 25, 2000, when Raymond Ashman IV and two of his friends went out in a boat owned by his father, Raymond Ashman III, to enjoy the start of the annual "Sportsmen's Lobster Mini-Season." Raymond Ashman IV was piloting the boat. His two friends along for the ride were Brendan and Steven Murphy who were brothers. The trio's trip ended in tragedy soon after it began when the boat collided with an "electrical pole abutment support structure" owned by Florida Keys Electric Co-op Association, Inc. Brendan Murphy was thrown from the boat

and killed, and his brother Steven was injured. Raymond Ashman IV was also injured.

Brendan and Steven's parents, the Murphys, sued Florida Keys in federal district court for the wrongful death of Brendan and for Steven's injuries.[2] Their complaint invoked the court's admiralty jurisdiction. The Murphys did not sue any member of the Ashman family, and still have not done so. In response to the Murphy's complaint against it, however, Florida Keys filed a third-party complaint against the Ashmans[3] which also invoked the district court's admiralty jurisdiction. Florida Keys claimed that, if it were found liable to the Murphys, it was entitled to contribution from the Ashmans. The Ashmans, for their part, filed a counterclaim against Florida Keys to recover for Raymond IV's injuries, but they brought that as a civil action under the district court's supplemental jurisdiction, not under its admiralty jurisdiction. They later brought a separate suit against Florida Keys in state court to recover for Raymond IV's injuries.

---

[2]The Murphys sued as parents and natural guardians of Steven, a minor, and as co-personal representatives of the estate of Brendan.

[3]Florida Keys' third-party complaint is against Raymond Ashman III, the father of Raymond Ashman IV, individually, and also in his capacity as parent and natural guardian of his son. Our references hereafter in this opinion to "the Ashmans" mean Raymond III, individually, and Raymond IV through him as parent and natural guardian.

While all of the actions were pending, Florida Keys settled with the Murphys. The settlement agreement, however, did not release the Ashmans from liability to the Murphys, should the Murphys ever bring suit against them. As a result, the Ashmans moved for summary judgment on Florida Keys' third party contribution claim, taking the position that Florida Keys' failure to obtain a release for them as part of the settlement agreement barred it from seeking contribution from them. The district court agreed and granted the Ashmans' motion for summary judgment. The court also exercised its discretionary powers under 28 U.S.C. § 1367(c)(3) and dismissed without prejudice the Ashman' counterclaim against Florida Keys. Florida Keys appeals both the grant of summary judgment on its contribution claim against the Ashmans and the dismissal without prejudice of their counterclaim against it.[4]

## DISCUSSION

---

[4]Of course, parties ordinarily do not complain about the dismissal of a claim or counterclaim against them, but the dismissal without prejudice allowed the Ashmans to pursue their claim against Florida Keys in state court. Florida Keys' apparent motivation in appealing the dismissal is its preference for a federal court forum.

In 1994 the Supreme Court settled decades of debate over the proper method of apportioning liability between settling and nonsettling tortfeasors in admiralty cases by holding that the "proportionate share approach" applies. See McDermott, 511 U.S. at 217, 114 S. Ct. at 1470. Under the proportionate share approach adopted in McDermott, if at least one defendant does not settle with the plaintiff and the case goes to trial, the amount of damages and the percentage of liability attributable to each tortfeasor is determined at trial, and any nonsettling defendant is responsible for only the proportion of the total damages attributed to it in the verdict. Id. at 208-13, 114 S. Ct. at 1465-67. We must decide, under the proportionate share approach, whether Florida Keys is now entitled to have determined at trial the actual amount of the Murphys' damages and the parties' relative degrees of fault, all for the purpose of Florida Keys recovering from the Ashmans any amount that it "overpaid" for its share of the damages in its settlement with the Murphys.

Allowing Florida Keys to recover contribution from the Ashmans in these circumstances is incompatible with the proportionate share approach. An essential tenet of this approach is that when a tortfeasor settles a claim against it, but does not obtain a release for the other tortfeasors, it has settled only its proportionate share of the total damages, no more and no less. It follows that what remains, and

6

all that remains, to be calculated is the compensation the nonsettling tortfeasors owe the plaintiff. Once that amount is determined at trial, the nonsettling tortfeasors are liable only to the plaintiff and only to the extent the trial verdict determines. Their trial-determined liability is in no way affected by a settling defendant's negotiated liability. See id. at 220, 114 S. Ct. at 1471 ("[O]ne of the virtues of the proportionate share rule is that, unlike the pro tanto rule, it does not make a litigating defendant's liability dependent on the amount of a settlement negotiated by others without regard to its interests.").

Applying the proportionate share approach to this case, Florida Keys resolved through the settlement only the amount of damages it owed to the Murphys. The settlement determined between those two parties the amount of damages the Murphys suffered and Florida Keys' percentage of fault. There is nothing about the issue of how much Florida Keys should have paid the Murphys that is to be litigated between Florida Keys and the Ashmans, because under the proportionate share approach it does not matter to the Ashmans how much Florida Keys should have paid the Murphys to discharge its liability to them. That is Florida Keys' business, not a matter of concern for the Ashmans.

To come at the same thing another way, when Florida Keys and the Murphys negotiated their settlement, they each assumed the risk of misjudging what a trial

would determine to be the amount of damage the Murphys had suffered and the proportion of the liability for that damage that should be attributed to Florida Keys instead of the Ashmans.[5] The Ashmans, who were not a party to the settlement assumed no such risk, preferring instead to risk whatever verdict the Murphys might obtain against them, perhaps discounted by the hope or expectation that the Murphys would not sue them. If the Murphys got more from settling with Florida Keys than they would have recovered from taking Florida Keys to trial, that does not lessen the potential liability of the Ashmans. See McDermott, at 219-20, 114 S. Ct. at 1471 ("[A]ny excess recovery is entirely attributable to the fact that the . . . defendants may have made an unwise settlement. . . . It seems to us that a plaintiff's good fortune in striking a favorable bargain with one defendant gives other defendants no claim to pay less than their proportionate share of the total loss."). Likewise, if the Murphys got less from Florida Keys than they would have recovered by trial, that does not increase the potential liability of the Ashmans. See id. at 221, 114 S. Ct. at 1472 ("Just as the other defendants are not entitled to a

_____

[5]Because of the multiple factors that must be taken into account when making settlement decisions, and because predicting the result of trials is not an exact science by any means, the settlement figure will rarely match what a trial would have determined to be actual damages owed the plaintiff by the settling defendant. See McDermott, 511 U.S. at 219-20, 114 S. Ct. at 1471 ("Because settlement amounts are based on rough estimates of liability, anticipated savings in litigation costs, and a host of other factors, they will rarely match exactly the amounts a trier of fact would have set."); Leger v. Drilling Well Control, Inc., 592 F.2d 1246, 1250 n.10 (5th Cir. 1979) ("[S]ettlement dollars cannot be equated with dollars obtained in the trial process.").

8

reduction in liability when the plaintiff negotiates a generous settlement . . . so they are not required to shoulder disproportionate liability when the plaintiff negotiates a meager one.") No suit for contribution will lie against a nonsettling defendant who is not released from liability, because that defendant remains liable for its proportionate share of damages regardless of the terms of the settlement the other defendant made. Id. at 209, 114 S. Ct. at 1466.

There are two ways to look at what Florida Keys is seeking to do, and both are telling. One way is that Florida Keys is seeking to escape the bargain it struck with the Murphys about the extent of its liability, trying to litigate with the Ashmans the issue of how much it should have paid the Murphys and then recover from the Ashmans any excess it did pay. That will not do, because the Ashmans are not responsible for the bargain Florida Keys struck with the Murphys. The other way to look at Florida Keys' position is that it is seeking to recover from the Ashmans the amount of the settlement it paid to the Murphys that is attributable to the Ashmans' liability. That will not do either, because none of the settlement is attributable to the Ashmans' liability, which was not released in whole or part. We hold Florida Keys to its bargain: it paid for a discharge of its liability to the Murphys, and that is all it got.

We have reached the identical conclusion once before. See Jovovich v. Desco Marine, Inc., 809 F.2d 1529, 1531 (11th Cir. 1987) (under the proportionate share approach contribution actions are not available to settling parties because "settling parties assume the finality and potential benefit and risk of their settlement decision, and . . . we will respect the aleatory nature of the settlement process" (internal quotation marks omitted)). We are bound to follow the Jovovich decision, see, e.g., United States v. Smith, 201 F.3d 1317, 1322 (11th Cir. 2000) ("It is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court." (internal quotation marks omitted)), with which we are in full agreement, anyway.

Florida Keys says that we should not adhere to Jovovich, but should instead follow the later decision in Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575 (11th Cir. 1992) ("Great Lakes III").[6] That decision held that settling defendants may sue nonsettling, unreleased defendants for contribution, id. at 1584, which is exactly the opposite result from the one reached

_____

[6]The Great Lakes litigation has come before this Court four times: Ebanks v. Great Lakes Dredge & Dock Co., 688 F.2d 716 (11th Cir. 1982) ("Great Lakes I"); Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540 (11th Cir. 1987) ("Great Lakes II"); Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575 (11th Cir. 1992) ("Great Lakes III"); Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 92 F.3d 1102 (11th Cir. 1996) ("Great Lakes IV").

10

five years earlier in Jovovich. A tour of the tortured path of our decisions in this area is necessary to understand why Great Lakes III did not follow Jovovich and why we do.

Our predecessor circuit first confronted the overarching issue of the proper way to apportion liability between settling and nonsettling tortfeasors in admiralty cases in Loffland Brothers Co. v. Huckabee, 373 F.2d 528 (5th Cir. 1967), and Billiot v. Stewart Seacraft, Inc., 382 F.2d 662 (5th Cir. 1967). In those two cases the Fifth Circuit determined that a nonsettling defendant is liable for the entire amount of the plaintiff's damages, less a set-off for the amount of the other tortfeasors' settlement, regardless of the proportion of the plaintiff's damages attributable to each tortfeasor. Billiot, 382 F.2d at 664; Loffland, 373 F.2d at 528. That method, of course, is the pro tanto approach. McDermott, 511 U.S. at 211-13, 212 n.14, 114 S. Ct. at 1467 & n.14.

Twelve years later, though, the Fifth Circuit overruled Loffland and Billiot and held that the proportionate share approach applied to admiralty tort cases. Leger v. Drilling Well Control, Inc., 592 F.2d 1246 (5th Cir. 1979). The overruling was based on the intervening Supreme Court decision in United States v. Reliable Transfer Co., 421 U.S. 397, 95 S. Ct. 1708 (1975). In Reliable Transfer

11

the Supreme Court had abandoned the "divided damages rule," which mandated that the parties at fault in admiralty cases each be liable for an equal portion of the damages regardless of their degrees of fault. For example, if the plaintiff was 25% at fault and the defendant 75% at fault, each would nevertheless be liable for half of the total damages. Id. at 397, 95 S. Ct. at 1709. In place of the divided damages approach, the Supreme Court in Reliable Transfer adopted the rule that each tortfeasor is responsible for the proportion of damages attributable to it. Id. at 411, 95 S. Ct. at 1715-16.

The Supreme Court's Reliable Transfer decision did not involve multiple defendants, one of whom had settled with the plaintiff. Nonetheless, the Fifth Circuit concluded in Leger that the rule adopted in Reliable Transfer undermined the pro tanto approach the circuit had been following to such an extent that it overruled Loffland and Billiot and adopted the proportionate share approach instead. Leger, 592 F.2d at 1249 ("[T]he [Supreme] Court seems to have answered the question by holding that, where the plaintiff and the defendant in a maritime collision case are both partly responsible for an accident, 'liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault . . . .'").

The proportionate share approach from Leger became part of the law of this circuit with this Court's decision in Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent Fifth Circuit decisions issued prior to the close of business on September 30, 1981). In 1987 this Court decided Jovovich, which confronted the precise issue we face in this case and held that under the proportionate share approach adopted in Leger a settling defendant cannot sue a nonsettling defendant whose liability to the plaintiff is not resolved by the settlement under either an indemnification or contribution theory. The Jovovich Court reasoned that Leger's holding that "settling parties assume the finality and potential benefit and risk of their settlement decision, and whether the plaintiff or any of the defendants are ultimately found to have made a favorable settlement, we will respect the aleatory nature of the settlement process" applies with equal force in indemnity or contribution actions. 809 F.2d at 1531. As a result, a settling defendant must live with its bargain and cannot sue a nonsettling one for indemnity or contribution. Id.

Shortly after Jovovich was released, however, this Court swerved back the other way, concluding in Self v. Great Lakes Dredge & Dock Co., 832 F.2d 1540 (11th Cir. 1987) ("Great Lakes II"), that the Supreme Court's decision in

13

Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 99 S. Ct. 2753 (1979), dictated a different result. The Great Lakes II Court held that, given the Supreme Court's guidance in Edmonds, the pro tanto approach was actually the approach that the Supreme Court would apply to apportion liability between settling and nonsettling defendants, and so that approach should once again be the law of this circuit. Great Lakes II, 832 F.2d at 1548 ("As we are bound by the Supreme Court's guidance and the rule in Edmonds, we adopt the [pro tanto approach].").

Then came Great Lakes III in 1992, which held that under the pro tanto approach adopted in Great Lakes II, a suit for contribution against a nonsettling, unreleased defendant is available to a settling defendant, even though under Jovovich such a suit is not available under the proportionate share approach. Great Lakes III, 957 F.2d at 1583. In so holding, Great Lakes III departed from the well-settled law of most jurisdictions that settling defendants may not bring a contribution action against nonsettling, unreleased defendants, regardless of which liability-apportionment scheme is in place. McDermott, 511 U.S. at 211 n.13, 114 S. Ct. at 1467 n.13 ("[T]he law of most jurisdictions [is] that a settling defendant ordinarily has no right of contribution against other defendants." (citing Unif.

14

Contribution Among Tortfeasors Act § 1(d), 12 U.L.A. 63 (1975); Unif. Comparative Fault Act § 4(b), 12 U.L.A. 54 (1993 Supp.); Restatement (Second) of Torts § 886A(2) & cmt. f, pp. 337, 339 (1977))).

In 1994 the Supreme Court resolved the issue of how liability between settling and nonsettling tortfeasors in admiralty cases should be apportioned, rejecting the pro tanto approach in favor of the proportionate share approach. See McDermott, 511 U.S. at 209-21, 114 S. Ct. at 1466-72. The McDermott decision authoritatively settled the dispute between our Leger and Great Lakes II decisions about which approach the Supreme Court favored. It established that Great Lakes II was wrong to conclude that Leger had been overruled by the Supreme Court's decision in Edmonds. We recognized this in our 1996 decision in Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 92 F.3d 1102 (11th Cir. 1996) ("Great Lakes IV"), which announced our return to the proportionate share approach in obedience to the Supreme Court's McDermott decision. Id. at 1106. We also held in Great Lakes IV, again in obedience to McDermott, that under the proportionate share approach a nonsettling defendant cannot sue a settling defendant for contribution, the converse of the issue we face in this case. Id. at 1106-07

Now this circuit (along with the rest of the country) is operating under the proportionate share approach in admiralty tort cases, see McDermott, 511 U.S. at 217, 114 S. Ct. at 1470; Great Lakes IV, 92 F.3d at 1106-07, and sixteen years ago we decided in the Jovovich case that under the proportionate share approach a settling defendant may not sue a nonsettling, unreleased defendant for contribution. Jovovich, 809 F.2d at 1530-32. It follows that Jovovich controls, and Florida Keys may not bring a suit for contribution against the Ashmans. However winding the path to the present state of the law, once we get here the equation is as simple as: McDermott and Great Lakes IV plus Jovovich equals settling defendants cannot sue nonsettling, unreleased defendants for contribution in admiralty tort cases.

Great Lakes III is no longer relevant, at least not in admiralty tort cases. It addressed nothing other than contribution rights under a pro tanto approach to apportioning liability. The pro tanto approach to apportioning liability is no longer the law in admiralty tort cases. See Smith v. GTE Corp., 236 F.3d 1292, 1303 n.11 (11th Cir. 2001) ("Subsequent panels are not bound by prior decisions where there has been a change in the controlling law as a result of a subsequent en banc or Supreme Court decision or statutory change."). The question Great Lakes III answered is no longer the question that arises in admiralty tort cases since the Supreme Court's McDermott decision.

16

Florida Keys says that the conclusion we reach will present parties who wish to settle with a Catch 22: either obtain a release for all parties and have contribution precluded by McDermott's rule barring contribution from settling parties, 511 U.S. at 209, 114 S. Ct. at 1466, or do not obtain a release and have contribution precluded by our holding in Jovovich and this case. That specter is based on a misreading of McDermott. That decision's prohibition against contribution from a settling party does not preclude a contribution suit against a tortfeasor who is released by the settlement even though not a party to it. A release is not the same as a settlement, and a released party is not a settling party within the meaning of McDermott, which does not purport to eliminate altogether the "well-established maritime rule allowing contribution between joint tortfeasors." Cooper Stevedoring Co. v. Frizt Kopke, Inc., 417 U.S. 106, 113, 94 S. Ct. 2174, 2178 (1974). Neither does our holding today. In any event, dilemma or no, we are bound to follow the McDermott/Great Lakes IV/Jovovich decisions.

One other issue remains to be decided. In addition to granting summary judgment in favor of the Ashmans on Florida Keys' contribution claim, the district court dismissed without prejudice the Ashmans' counterclaim against Florida Keys under 28 U.S.C. § 1367(c). That suited the Ashmans fine, but Florida Keys, apparently preferring to stay in federal court, argues that the Ashmans'

17

counterclaim could only have been properly asserted under the district court's admiralty jurisdiction, not its supplemental jurisdiction, and therefore dismissal under § 1367(c) was an abuse of discretion. We disagree with the initial premise of that argument.

The Ashmans originally could have brought their maritime tort claim against Florida Keys in one of two ways. They could have sued in state court, a right guaranteed them by the "savings to suitors" clause of 28 U.S.C. § 1333, or they could have sued in federal court by invoking the district court's admiralty jurisdiction.[7] See, e.g., Cont'l Cas. Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1344 (5th Cir. 1979). Once Florida Keys filed a third-party complaint against the Ashmans in federal court, however, their maritime tort claim became a compulsory counterclaim under Federal Rule of Civil Procedure 13(a), because it arose from the same transaction or occurrence, the boating accident, as Florida Keys' third-party complaint against the Ashmans for contribution. A maritime tort claim may be asserted in federal court without invoking the court's admiralty jurisdiction if the claim falls within the court's supplemental jurisdiction. See

---

[7]There was no diversity of citizenship between the Ashmans and Florida Keys, so the Ashmans could not have brought their maritime tort claim as a civil action in federal court under the "savings to suitors" clause. See Cont'l Cas. Co. v. Canadian Universal Ins. Co., 605 F.2d 1340, 1344 (5th Cir. 1979).

Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 380-81, 79 S. Ct. 468, 484-85 (1959) (holding that the district court had pendant jurisdiction to consider maintenance and cure claims brought "by a complaint at law rather than by a libel in admiralty" because the complaint also alleged a Jones Act violation, which was within the district court's jurisdiction under 28 U.S.C. § 1331).  The Ashmans were thus not required to bring their maritime tort claim under the district court's admiralty jurisdiction because as a compulsory counterclaim their maritime tort claim was within the district court's supplemental jurisdiction, see 28 U.S.C. § 1367; Marine Trasp. Servs. Sea-Barge Group, Inc. v. Python High Performance Marine Corp., 16 F.3d 1133, 1139 (11th Cir. 1994), and therefore could have been asserted as a civil action under the "savings to suitors" clause instead of as an admiralty claim, see Romero, 358 U.S. at 380-81, 79 S. Ct. at 484-85.

Florida Keys third-party complaint against the Ashmans thus left them with two options for federal court jurisdiction over their claim against Florida Keys. They could invoke the district court's admiralty jurisdiction, or they could bring their maritime tort claim as a civil action under the district court's supplemental jurisdiction as a compulsory counterclaim.  If a claim has multiple jurisdictional bases, one of which is admiralty, Federal Rule of Civil Procedure 9(h) provides that the pleading "may contain a statement identifying the claim as an admiralty or

19

maritime claim." Failure to identify a claim as an admiralty or maritime claim in these circumstances means that it is not one. See Fed. R. Civ. P. 9(h), advisory committee notes (noting that the unification of admiralty and civil actions necessitated a procedural mechanism to preserve the "power of the pleader to determine whether these historically maritime procedures shall be applicable to his claim or not; the pleader must be afforded some means of designating his claim"); Romero v. Bethlehem Steel Corp., 515 F.2d 1249, 1254 (5th Cir. 1975) (noting that the plaintiff "could have obtained a jury trial on all claims simply by omitting or withdrawing the 9(h) designation in his complaint and bringing his entire suit as a civil action"); Doucet v. Wheless Drilling Co., 467 F.2d 336, 339 (5th Cir. 1972) (noting that "this action began at law, because it was filed without a statement identifying the claim as an admiralty claim, as provided by Rule 9(h)"). The Ashmans did not include a statement in their pleading invoking the district court's admiralty jurisdiction. Therefore, their maritime tort claim was brought as a civil action under the district court's supplemental jurisdiction. Once the district court granted summary judgment on Florida Keys' contribution claim it had the discretion to dismiss the Ashmans' counterclaim. See 28 U.S.C. § 1367(c). There was no abuse of discretion.

AFFIRMED.

20