United States Court of Appeals,

Eleventh Circuit.

No. 95-2012.

GREAT LAKES DREDGE AND DOCK CO., Plaintiff-Appellant,

v.

TANKER ROBERT WATT MILLER, Defendant-Appellee.

In re CHEVRON TRANSPORT CO., as owner of the S/S ROBERT WATT MILLER, in an action from exoneration from or limitations of liability, Great Lakes Dredge & Dock Co., Claimant-Appellant.

GREAT LAKES DREDGE AND DOCK CO., Plaintiff-Appellant,

v.

CHEVRON SHIPPING COMPANY and Italia Societer Per Az Di Nav, Defendants-Appellees.

Aug. 28, 1996.

Appeal from the United States District Court for the Middle District of Florida. (Nos. 75-87-CIV-J-10, 77-635-CIV-J-10), William T. Hodges, Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

COX, Circuit Judge:

Great Lakes Dredge & Dock Company ("Great Lakes") appeals the dismissal of its contribution claims against Chevron Transport Corporation and Chevron Shipping Corporation (collectively "Chevron") arising from the parties' liability for injuries and damages sustained as the result of a collision between a tanker and a dredge in 1975. Great Lakes also appeals the denial of its motion to alter or amend the judgment with regard to its claims for contribution for maintenance and cure paid to the injured and

---

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

deceased seamen.  We affirm the dismissal of Great Lakes's general contribution claims, but reverse the dismissal of its contribution claims for maintenance and cure expenses and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

This appeal is the fourth arising out of the 1975 collision between the tanker *Robert Watt Miller,* owned and operated by Chevron, and the dredge *Alaska,* owned by Great Lakes, in the St. Johns River near Jacksonville, Florida.  The history of this case has been exhaustively recorded by the district court, *see Complaint of Chevron Transport Corp.,* 613 F.Supp. 1428, 1431–33 (M.D.Fla.1985), *aff'd in part and rev'd in part sub nom. Self v. Great Lakes,* 832 F.2d 1540 (11th Cir.1987), *cert. denied,* 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988), and by this court, *see Great Lakes v. Tanker Robert Watt Miller,* 957 F.2d 1575, 1576–78 (11th Cir.), *cert. denied,* 506 U.S. 981, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992) [hereinafter *Great Lakes III* ];  *Self,* 832 F.2d at 1543–45;  *Ebanks v. Great Lakes,* 688 F.2d 716, 717 (11th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1774, 76 L.Ed.2d 346 (1983).  Accordingly, we discuss the background of this case only as relevant to the issues currently presented.

As a result of the collision, two crew members of the *Alaska* were killed and several others were injured.  The injured crew members and the estates of the deceased filed separate suits against Great Lakes for damages, and Great Lakes filed third-party complaints against Chevron for indemnity, contribution, and damage to the *Alaska.*  By the time this matter last came before this

court, all these claims had been resolved through settlements or final judicial disposition,[1] except for Great Lakes's claims for contribution against Chevron. *Great Lakes III,* 957 F.2d at 1577. These contribution claims are the subject of this appeal as well.

In deciding *Great Lakes III,* we were presented with the question of whether Great Lakes was precluded from asserting a claim for contribution against Chevron because of either Chevron's previous settlement (a "settlement bar" rule) or Great Lakes's eventual settlement (a "settler barred" rule) with the injured and deceased crewmen. The district court had relied upon dicta in *Self,* 832 F.2d at 1547, to conclude that Great Lakes was prevented from asserting contribution claims against Chevron because of the settlement bar rule. We reversed, holding that "an action for contribution against a settling tortfeasor may be maintained by a nonsettling joint tortfeasor that has paid more than its share of the plaintiff's damages based upon the respective degrees of fault." 975 F.2d at 1582-83. We went on to reject the "settler barred" rationale, holding that "Great Lakes's claims for contribution from Chevron [were] not barred by the fact that Great

_____

[1]Chevron settled with the injured crew members and the estates of the deceased crewmen, for a total of $707,800. *See Great Lakes III,* 957 F.2d at 1576-77. Shortly thereafter, the district court severed Great Lakes's third-party claims against Chevron and tried the actions against Great Lakes before a jury. *Id.* at 1577. After we reversed an initial verdict for Great Lakes and remanded for a new trial, *Ebanks,* 688 F.2d at 722, Great Lakes settled with all the claimants except for crewman Danny Self's estate, for a total of $943,199. After another round of litigation in the district court and in this court, Great Lakes settled with the Self estate for $2,050,000. By then, Chevron had been granted summary judgment on Great Lakes's indemnity claims, and Chevron and Great Lakes had resolved their dispute over damage to the vessels involved in the collision. *Great Lakes III,* 957 F.2d at 1577 n. 2.

Lakes itself settled with the injured crewmen and estates." *Id.* at 1584. We concluded that this result best reconciled our adoption of the *pro tanto* approach for apportioning liability among joint tortfeasors, *Self,* 832 F.2d at 1548, with the Supreme Court's holding that liability in maritime actions be distributed according to the parties' comparative degrees of fault, *United States v. Reliable Transfer Co.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975).[2] We remanded this case to allow the district court to determine whether Great Lakes was ultimately entitled to recover contribution from Chevron. *Great Lakes III,* 957 F.2d at 1584.

On remand, Great Lakes moved for summary judgment on its contribution claims. Great Lakes argued that the amounts of its settlements with all the claimants, except for that of crewman Danny Self's estate, constituted presumptive proof of damages,[3] and

---

[2]How best to apportion liability among settling and non-settling joint tortfeasors has long been the subject of debate. The *pro tanto* approach gives a remaining tortfeasor a credit for the actual dollar amount of a settlement made by a joint tortfeasor. Prior to *Self,* this circuit had adopted the *pro rata,* or proportionate share, approach, which gives a nonsettling tortfeasor a credit based on the comparative fault of a settling joint tortfeasor. *See Leger v. Drilling Well Control, Inc.,* 592 F.2d 1246, 1249-50 (5th Cir.1979). For a comparison of these competing approaches, see *Great Lakes III,* 957 F.2d at 1579.

In *Self,* we abandoned *Leger* and reaffirmed the *pro tanto* rule established in *Billiot v. Stewart Seacraft,* 382 F.2d 662, 664-65 (5th Cir.1967). We concluded that this course of action was required by evolving Supreme Court precedent clarifying *Reliable Transfer. See Self,* 832 F.2d at 1546-48 & n. 6 (discussing *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979)).

[3]Great Lakes moved for partial summary judgment on the Self claim, but conceded that the reasonableness of the $2,050,000

it asserted that the district court's previous determination of comparative fault with regard to Self's death (assigning 70% of the blame for the accident to Chevron and 30% to Great Lakes) was applicable to all claimants. *See Self,* 832 F.2d at 1544. Chevron opposed both motions, arguing that Great Lakes had to prove that it paid more than its proportionate share of their common liability in order to be entitled to contribution. Chevron also moved for summary judgment.

The district court denied the motions and set Great Lakes's contribution claims for trial. (R. 2-42 at 3-4.) To ascertain whether Great Lakes was entitled to contribution, the court concluded that, at trial, evidence had to be adduced as to (1) the amount of actual damages suffered by each of the crew members, (2) the comparative degrees of fault borne by Great Lakes and Chevron with regard to each crewman except for Danny Self, and (3) whether Great Lakes's settlements included compensation for crew members' punitive damages claims. (*Id.* at 4.)

While the trial was pending, the Supreme Court decided *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), and *Boca Grande Club, Inc. v. Florida Power & Light Co.,* 511 U.S. 222, 114 S.Ct. 1472, 128 L.Ed.2d 165 (1994). In *McDermott,* the Court rejected the *pro tanto* approach espoused by this circuit and held that a proportionate share approach, which simply reduces an award against a nonsettling tortfeasor by the percentage of fault assigned to a settling joint tortfeasor, is superior to a *pro tanto* setoff and more consistent with *Reliable*

settlement remained a disputed issue of material fact.

*Transfer,* 511 U.S. at ----, 114 S.Ct. at 1470. *Boca Grande* involved the question of whether a plaintiff's settlement with one tortfeasor barred a contribution claim brought by a nonsettling joint tortfeasor. The Court relied on *McDermott* to vacate a panel opinion from this circuit, which had followed *Great Lakes III* in rejecting the settlement bar rule. The Court stated simply that because it had adopted the proportionate share rule, "actions for contribution against settling defendants are neither necessary nor permitted." *Boca Grande,* 511 U.S. at ----, 114 S.Ct. at 1472.

After the Supreme Court decided *McDermott* and *Boca Grande,* Chevron moved to dismiss Great Lakes's contribution claims and moved in the alternative for summary judgment or judgment on the pleadings. Citing *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), Chevron argued that *McDermott* and *Boca Grande* effectively overruled *Self* and *Great Lakes III* and mandated a dismissal of Great Lakes's contribution claims. The district court agreed and dismissed Great Lakes's claims. (R. 2-62 at 2.) Great Lakes filed a motion to alter or amend the judgment, arguing that even if its general contribution claims were precluded, its claims for contribution based on maintenance and cure expenses survived *McDermott* and *Boca Grande.* The district court denied the motion to alter or amend, and this appeal followed.

ISSUES ON APPEAL AND CONTENTIONS OF THE PARTIES

In this appeal, we must decide whether the district court correctly concluded that *McDermott* and *Boca Grande* foreclose Great Lakes's claims for contribution. Great Lakes argues that the

decisions should not be applied retroactively to preclude its claims against Chevron. Great Lakes contends that by the time *McDermott* and *Boca Grande* were decided, it had already obtained a right to seek contribution by virtue of our opinions in *Self* and *Great Lakes III,* leaving only the actual amount of contribution to be determined. Because only this "collateral" matter is left to be resolved, Great Lakes reasons, our opinion in *Self,* which adopted the *pro tanto* approach, remains the law of the case, and *Great Lakes III* should apply to permit Great Lakes to recover any amount it paid in excess of its relative share of liability.

Chevron contends that the district court correctly applied *McDermott* and *Boca Grande,* because Great Lakes's contribution claims were still "open on direct review" when the Supreme Court decided the cases. Chevron argues that, even as the law of this case, *Self* and *Great Lakes III* must yield to intervening Supreme Court precedent, so that Great Lakes's claims are clearly barred by the holdings of *McDermott* and *Boca Grande.*

Great Lakes also argues that, even if its general contribution claims are barred, the district court erred by dismissing its claims based on the maintenance and cure payments it made to the injured and deceased seamen. Great Lakes contends that, at the least, the district court construed *McDermott* and *Boca Grande* too broadly in concluding that the cases barred contribution claims for maintenance and cure expenses. Chevron counters that the district court correctly read those cases to preclude *all* contribution

claims against a settling tortfeasor.[4]

### DISCUSSION

The district court read *McDermott* and *Boca Grande* to hold squarely that actions for contribution against settling defendants are neither necessary nor permitted, and it concluded that the new rule of law adopted in those cases "is clearly retroactive and applicable" to Great Lakes's claims. (R. 2-63 at 2 (citing *Harper,* 509 U.S. at 86, 113 S.Ct. at 2510).) The district court rejected Great Lakes's argument that its contribution claims were sustained by the law of the case, stating that "one of the conditions justifying if not mandating a deviation from that doctrine [occurs when] "controlling authority has since made a contrary decision of the law applicable to the issue.' " (*Id.* (quoting *Westbrook v. Zant,* 743 F.2d 764, 769 (11th Cir.1984)).) We review the district court's legal conclusions de novo. *Marine Transp. Serv. v. Python High Performance Marine Corp.,* 16 F.3d 1133, 1138 (11th Cir.1994) (citation omitted).

A. Great Lakes's general contribution claims

We agree with the district court's conclusion that Great Lakes's general contribution claims are precluded by *McDermott* and *Boca Grande.* In *McDermott,* the Court plainly rejected the *pro*

---

[4]Great Lakes also challenges the denial of its motion to alter or amend the judgment, which repeats Great Lakes's argument concerning the dismissal of its contribution claims based on maintenance and cure expenses. Great Lakes separately contends that, with regard to its motion for summary judgment, the district court erred by rejecting the argument that Great Lakes's settlement amounts constitute presumptive proof of actual damages for the purpose of assessing its general contribution claims. Because of our resolution of Great Lakes's appeal of the district court's dismissal of its claims, it is unnecessary for us to address either of these questions.

*tanto* approach espoused by this circuit since *Self,* and in so doing, obviated the reasoning we used in *Great Lakes III* to conclude that Great Lakes could assert its claims for contribution against Chevron. *See* 511 U.S. at ----, 114 S.Ct. at 1466-70. Great Lakes does not necessarily dispute *McDermott* 's holding; instead, it contends that the new rule of law should not be applied retroactively to disturb the settled law of the case, as developed in *Self* and *Great Lakes III.* Great Lakes argues that *Harper v. Virginia Dept. of Taxation,* on which the district court relied to apply *McDermott* and *Boca Grande* to this case, is distinguishable, because here, all the independent claims, i.e., those of the injured and deceased crewmen, are no longer "open on direct review." *See Harper,* 509 U.S. at 97, 113 S.Ct. at 2517. Characterizing its contribution claims as merely collateral, Great Lakes in essence argues that, because the principal claims have been settled, there is no way to give a proportionate share credit to Great Lakes; therefore, its contribution claims should escape *McDermott* and *Boca Grande* 's reach.

We are not unsympathetic to the possibility that, if *McDermott* and *Boca Grande* are applied to this case, Great Lakes may be left having paid an amount greater than its proportionate share of liability. But Great Lakes's contribution claims are not "collateral" for the purposes of *Harper* 's retroactivity rule; they are derivative but independent claims assertible against Chevron, and they remained "open on direct review" when *McDermott* and *Boca Grande* were decided. Far from being finally resolved, the contribution claims were awaiting a trial on their merits when the

Supreme Court held that contribution claims arising from joint liability are barred.

Our reading of *Boca Grande* makes us more certain that Great Lakes's general contribution claims cannot be "grandfathered" in some way to survive *McDermott.* This court was presented with only one issue when it decided *Boca Grande* prior to the Supreme Court's decision in the case: whether the settlement bar rule suggested by *Self* precluded a contribution claim against a settling defendant. *Boca Grande Club, Inc. v. Polackwich,* 990 F.2d 606, 607 (1993). The *Boca Grande* panel relied upon our intervening decision in *Great Lakes III* to vacate a contrary decision by the district court and remand for further proceedings. *Id.* The Supreme Court vacated this court's judgment, based on *McDermott,* stating that "actions for contribution ... are [no longer] necessary [or] permitted." *Boca Grande,* 511 U.S. at ----, 114 S.Ct. at 1472.

The *Boca Grande* Court reached this result despite the risk, also present in this case, that application of the *pro tanto* approach, decoupled from a right of contribution, would in some cases leave joint tortfeasors ultimately to shoulder more than their proportionate shares of liability. The *Boca Grande* Court could have decided to create an exception to protect such litigants, but it did not. We are bound to take the same course of action here; we hold that Great Lakes's general contribution claims are barred.

B. Great Lakes's claims for contribution based on maintenance and cure

We do not read *McDermott* and *Boca Grande* to require the same result with regard to Great Lakes's claims based on maintenance and

cure; those decisions do not address whether a shipowner that is also a tortfeasor can recover maintenance and cure expenses based on the relative fault of other joint tortfeasors. *McDermott* and *Boca Grande* addressed the issue of how best to divide liability among settling and nonsettling joint tortfeasors, all of which, by definition, caused the harm suffered by an injured plaintiff. The *McDermott* Court faulted the use of a *pro tanto* setoff with a subsequent right of contribution, because such an approach both discourages settlements and burdens the judiciary with ancillary litigation. 511 U.S. at ----, 114 S.Ct. at 1467. By contrast, the Court favored the proportionate share approach because it "is more consistent with *Reliable Transfer*," and "no suits for contribution ... are permitted, nor are they necessary, because the nonsettling defendants pay no more than their share of the judgment." *Id.* at ----, at 1466-67. The Court adopted the proportionate share approach because it provides for allocation of liability based on relative fault while conserving judicial resources and maintaining proper incentives to settle claims. Under *McDermott*, then, separate contribution actions are both unnecessary and counter to the decision's underlying rationale of minimizing the drain on resources caused by ancillary litigation.

One of the concerns addressed in *McDermott* and *Boca Grande*—*Reliable Transfer* 's principle that liability be allocated according to relative fault—is not met by applying *McDermott* 's rationale to contribution claims to recover maintenance and cure. While a joint tortfeasor's obligation arises because of its injurious conduct, and its degree of liability is directly related

to its share of the blame, a shipowner is liable to provide maintenance and cure—food, medical care, and lodging—to sick or injured seamen in the ship's employ, regardless of the cause of sickness or injury. "The shipowner's obligation to pay maintenance and cure ... is not based on fault but results from the relationship of ship and seaman." *Adams v. Texaco, Inc.,* 640 F.2d 618, 620 (5th Cir. Unit A Mar. 23, 1981) (citation omitted).

In *Adams,* the Former Fifth Circuit held that "a concurrently negligent tortfeasor should proportionately contribute to maintenance and cure paid by a negligent shipowner when the latter's negligence only concurrently contributed to the seamen's injury." *Id.* at 621. This holding is consistent with *McDermott* and *Boca Grande,* to the extent that they reaffirm *Reliable Transfer* 's principle that liability be allocated based on relative fault. A shipowner, unlike a nonsettling joint tortfeasor, will never receive the benefit of a proportionate share credit under *McDermott;* the *only* way to apportion the cost of maintenance and cure among all tortfeasors responsible for the harm to seamen is to allow claims for contribution. Otherwise, a shipowner would simply always be liable for all of its maintenance and cure expenses, despite some degree of fault on the part of other joint tortfeasors. The Court in *McDermott* and *Boca Grande* had to choose among competing methods of apportioning general liability pursuant to *Reliable Transfer;* it did not address contribution actions for maintenance and cure, like those of Great Lakes, which are the only means by which to achieve a distribution of liability based on relative fault. Because *McDermott* and *Boca Grande* leave intact

binding precedent allowing contribution claims based on maintenance and cure expenses, we are bound to hold that Great Lakes's claims based on maintenance and cure should have been allowed to proceed.

CONCLUSION

We affirm the district court's dismissal of Great Lakes's contribution claims based on liability for the injuries and deaths suffered as a result of the collision between the *Alaska* and the *Robert Watt Miller*.  But we conclude that the court improperly dismissed the claims for contribution based on Great Lakes's maintenance and cure expenses, so we reverse in part and remand for further proceedings.

AFFIRMED IN PART;  REVERSED IN PART AND REMANDED.