[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14129

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-23248-PCH


QUAIL CRUISES SHIP MANAGEMENT LTD.,
a company incorporated under the laws of the Bahamas,

Plaintiff - Appellant,


versus


AGENCIA DE VIAGENS CVC TUR LIMITADA,
a company incorporated under the laws of Brazil,
VALTER PATRIANI, an individual residing in Brazil,
SEAHAWK NORTH AMERICA, LLC, a Florida corporation,
RODOLFO SPINELLI, an individual residing in Florida,
LLOYD'S REGISTER NORTH AMERICA, INC., a Delaware
corporation,

Defendants - Appellees.


_____

No. 10-14253

_____

D.C. Docket No. 1:09-cv-23248-PCH

QUAIL CRUISES SHIP MANAGEMENT LTD.,
a company incorporated under the laws of the Bahamas,

Plaintiff - Appellee,

versus

AGENCIA DE VIAGENS CVC TUR LIMITADA,
a company incorporated under the laws of Brazil, et al.,

Defendants,

LLOYD'S REGISTER NORTH AMERICA, INC.,
a Delaware corporation,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(July 8, 2011)

Before BARKETT and WILSON, Circuit Judges, and WALTER,[*] District Judge.

PER CURIAM:

Quail Cruises Ship Management Ltd. ("Quail") appeals from the district

court's order dismissing its amended complaint for lack of subject matter

_____

[*] Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

jurisdiction.[1]  After careful review of the record and the parties' briefs, and having the benefit of oral argument, we vacate the district court's order and remand for further proceedings.

## I. BACKGROUND

Quail, a cruise ship operator, alleged in its amended complaint that the defendants conspired to induce it to purchase the M/V Pacific ("vessel")—better known as the eponymous Love Boat from its television days of the 1970s and 1980s—by fraudulently misrepresenting the vessel's deteriorating and defective condition.  Quail alleged that the fraud was orchestrated by Agencia de Viagens CVC Tur Limitada ("CVC"), a tour operating company, and its President Valter Patriani.  According to Quail, CVC directed Seahawk North America, LLC ("Seahawk"), a ship management company supervising the vessel's operation, and its President Rodolfo Spinelli, to defer repairs and conceal the vessel's condition.  As a part of the concealment effort, Seahawk allegedly influenced Lloyd's Register North America, Inc. ("LRNA"), a maritime classification society, to provide favorable inspections and certify the vessel's seaworthiness.  Quail further

---

[1]  We review de novo the district court's dismissal for lack of subject matter jurisdiction, construing the complaint in the light most favorable to the plaintiff and accepting all well-pled facts alleged in the complaint as true.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

alleged that, while overseas, CVC and Seahawk representatives made several fraudulent misrepresentations regarding the vessel's condition. In reliance on those representations, as well as those made by LRNA, Quail alleged that it purchased the stock shares of Templeton International Inc. ("Templeton"), the principal asset of which was the vessel.[2]

Quail brought claims for: securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5; maritime torts of fraud in the inducement, recklessness, and negligence/negligent misrepresentation; and common law claims of civil conspiracy to commit fraud in the inducement, fraud in the inducement, and breach of fiduciary duty. Quail sought damages for extensive repair work to the vessel, loss of use of the vessel as a passenger cruise ship, and injury to its reputation as a cruise ship operator.

The district court dismissed Quail's amended complaint for lack of subject matter jurisdiction. Applying the Supreme Court's recent decision in Morrison v. Nat'l Australia Bank Ltd., 561 U.S. __, 130 S. Ct. 2869 (2010), which held that § 10(b) and SEC Rule 10b-5 do not apply extraterritorially, the district court

---

[2] Quail purchased Templeton from Flameck International, S.A., an entity controlled by CVC. Flameck is not a party to this lawsuit because the share purchase agreement between Quail and Flameck contained an arbitration clause.

4

concluded that it lacked federal question jurisdiction over the securities fraud claim, because Quail failed to allege that the purchase or sale of the Templeton stock took place within the United States.[3] The court also concluded that it lacked admiralty jurisdiction over Quail's putative maritime tort claims. As a result, the court declined to exercise supplemental jurisdiction over Quail's common law claims. See 28 U.S.C. § 1367(c)(3). It then dismissed as moot both Patriani's pending motion to dismiss for lack of personal jurisdiction and LRNA's pending motion to dismiss for improper venue based on a forum-selection clause. Quail appeals the dismissal of its amended complaint, and LRNA cross-appeals the concomitant denial (as moot) of its motion to dismiss for improper venue.

## II.  DISCUSSION

We begin our analysis with Quail's claim for securities fraud, brought pursuant to § 10(b) of the Securities Exchange Act and SEC Rule 10b-5. The Supreme Court in Morrison recently examined the territorial scope of § 10(b) and, by extension, Rule 10b-5.[4] After holding that § 10(b) does not apply

---

[3] Despite dismissing this claim for lack of subject matter jurisdiction, the court correctly recognized elsewhere in its order that, under Morrison, this issue of extraterritoriality goes only to the ability to state a claim, not subject matter jurisdiction. 130 S. Ct. at 2876–77. Nonetheless, the district court concluded that it "lack[ed] subject matter jurisdiction over this litigation."

[4] Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered,

5

extraterritorially, id. at 2877–2883, the Court delineated the scope of § 10(b)'s domestic application. Emphasizing that the focus of the statute was on purchases and sales occurring within the United States, the Court adopted a bright-line "transactional test." Id. at 2884–86. Specifically, the Court held that, regardless of whether the underlying fraudulent conduct occurs in or affects the United States, § 10(b) applies only where the security at issue is listed on a domestic stock exchange or, if not so listed, where "its purchase or sale is made in the United States." Id. at 2886; see id. at 2878–81, 2884–88.

In this case, there is no dispute that the Templeton stock was not listed on a domestic stock exchange, and so the only issue under Morrison is whether the "purchase or sale" occurred in the United States. The district court read Quail's amended complaint as alleging only that the parties intended the closing to occur in the United States. However, Quail clearly alleged (and we must accept as true) that "[t]he transaction for the acquisition of the Templeton stock closed in Miami,

---

or any securities-based swap agreement . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5 makes it "unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange," to commit fraud "in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. Because Rule 10b-5 "was promulgated under § 10(b), and does not extend beyond conduct encompassed by § 10(b)'s prohibition," its territorial reach does not extend beyond that of § 10(b). Morrison, 130 S. Ct. at 2881 (citation omitted).

6

Florida on June 10, 2008, by means of the parties submitting the stock transfer documents by express courier into this District . . . ." Amend. Compl. ¶ 66. Thus, Quail alleged that the closing actually occurred in the United States, and it was here that "the transaction [wa]s consummated." Black's Law Dictionary 291 (9th ed. 2009) (defining "closing"). Indeed, the purchase and sale agreement confirms that it was not until this domestic closing that title to the shares was transferred to Quail.[5] By definition, that transfer of title constituted a sale. See id. at 1464 (defining "sale" as, inter alia, the "transfer of property or title for a price"). Given that the Supreme Court in Morrison deliberately established a bright-line test based exclusively on the location of the purchase or sale of the security, we cannot say at this stage in the proceedings that the alleged transfer of title to the shares in the United States lies beyond § 10(b)'s territorial reach. Accordingly, we conclude that the district erred by dismissing Quail's claim on this basis.

Our present inquiry need go no further. Although Quail also challenges on appeal the district court's conclusion that it lacked admiralty jurisdiction over Quail's putative maritime tort claims, we find it unnecessary to address that issue at this juncture. Because those claims form "part of the same case or controversy"

---

[5] Although we ordinarily consider only the face of the complaint and documents attached thereto when analyzing a motion to dismiss, we consider the agreement here because Quail refers to it in the complaint, it is central to Quail's claim, its contents are not in dispute, and the defendants attached it to their motion to dismiss. See Fin. Sec. Assur. Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

as Quail's securities fraud claim, the district court has, at the very least, supplemental jurisdiction over those claims. 28 U.S.C. § 1367(a); see Murphy v. Fla. Keys Elec. Co-op. Ass'n, Inc., 329 F.3d 1311, 1319 (11th Cir. 2003) ("A maritime tort claim may be asserted in federal court without invoking the court's admiralty jurisdiction if the claim falls within the court's supplemental jurisdiction."). The same is true of Quail's related common law claims.

### III. CONCLUSION

For the foregoing reasons, we vacate the district court's order dismissing Quail's amended complaint and remand for further proceedings consistent with this opinion. To be clear, we vacate the court's order in its entirety, including its denial (as moot) of Patriani's motion to dismiss for lack of personal jurisdiction and LRNA's motion to dismiss for improper venue,[6] as those denials were premised on the court's erroneous conclusion that it lacked subject matter jurisdiction over the case.

**VACATED AND REMANDED.**

---

[6] This disposition renders LRNA's cross-appeal moot.